# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
THOMAS D. BRENNAN                   )
                    Plaintiff,      )
                                    )
v.                                  )          Civil Action No. 05-40034-FDS
                                    )
LIFE INSURANCE COMPANY              )
OF NORTH AMERICA                    )
                    Defendant.      )
_____)

## LINA'S MOTION FOR A PROTECTIVE ORDER
## REGARDING 30(b)(6) DEPOSITION NOTICE OF LINA

Defendant, Life Insurance Company of North America ("LINA"), hereby moves for a
protective order with respect to the topics noticed and documents requested by Plaintiff in the
Rule 30(b)(6) Deposition Notice of LINA.  Plaintiff provided LINA's counsel with a Rule
30(b)(6) Deposition Notice for LINA on February 23, 2007, noticing a deposition on numerous
exhaustive, over broad and irrelevant topics to occur only twelve days later on March 7, 2007.
For the reasons set forth herein, LINA requests that the Court issue a protective order as to
almost all of the Rule 30(b)(6) topics identified by Plaintiff.  Noting that the parties have not
requested a hearing with respect to any discovery disputes in this case to date, LINA respectfully
requests a hearing on this Motion for a Protective Order.

This case involves this Court's *de novo* review of a claim by Plaintiff for long-term
disability benefits under an ERISA Plan, the Mail-Well Corporation Long Term Disability Plan,
Policy No. LK-007945 (the "Plan").  Stipulation to the Standard of Review (Docket No. 21).  In
order to succeed on his claim, Plaintiff must prove that he is both eligible for and entitled to
benefits under the terms of the Plan.  The Deposition Notice seeks testimony on numerous topics
not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, the

Deposition Notice also impermissibly requests documents previously objected to by LINA that Plaintiff has not moved to compel. The Court must protect LINA from this impermissible discovery.

LINA wishes to inform the Court that it has previously related to Plaintiff's counsel that LINA remains willing to produce a Rule 30(b)(6) witness to testify about information that LINA learned during the processing of Plaintiff's claim relevant to the issues to be determined by the Court as detailed below. LINA requests that the Court's protective order limit the 30(b)(6) topics to those issues.

## FACTS

This case involves a claim by Plaintiff for long-term disability benefits under the Mail-Well Corporation Long Term Disability Plan, Policy No. LK-007945 ("Plan"). Complaint at ¶ 4. The Plan is subject to the provisions of the Employment Retirement Income Security Act ("ERISA"). Complaint at ¶ 18. LINA issued the Plan to Mail Well Corporation and is also the claims administrator for the Plan. See Plan, attached hereto at Exhibit A. Plaintiff filed a claim for long-term disability benefits on or about September 20, 2001. Complaint at ¶ 10. LINA initially denied Plaintiff's claim by letter dated April 23, 2004. Complaint at ¶ 13. Plaintiff appealed LINA's denial by letter dated October 15, 2004. Complaint at ¶ 14. LINA did not make a determination with respect to Plaintiff's appeal before Plaintiff filed this lawsuit. Complaint at ¶ 16.

As a result of LINA's not deciding the appeal of Plaintiff's claim, Plaintiff's claim was deemed denied pursuant to Department of Labor regulations. 29 C.F.R. § 2560.503-1(e)(2), 1984 version. As a result of LINA not issuing a decision on Plaintiff's appeal and the appeal

being "deemed denied" under the regulations, Plaintiff exhausted the administrative remedies and was entitled to file the instant suit.

On January 10, 2006, Plaintiff served LINA with his First Request for Production of Documents ("Plaintiff's Request for Documents"), attached hereto at Exhibit B, seeking documents relating to LINA's claims process. <u>Plaintiff's Request for Documents</u> at Request Nos. 3, 4, 22, 23-27. Plaintiff's Request for Documents also sought documents relating to other claimants and/or other insureds, <u>Plaintiff's Request for Documents</u> at Requests Nos. 14, 33-35, and information and documents relating to the distribution of Plan information, <u>Plaintiff's Requests for Documents</u> at Requests Nos. 29, 30 and 31. LINA responded to Plaintiff's Requests for Documents and objected to Plaintiff's Requests for Documents relating to LINA's claims process, other claimants and/or insureds and information and documents relating to the distribution of Plan information. <u>LINA's Response to Plaintiff's Requests for Documents</u>, attached at Exhibit C. Plaintiff has not moved to compel LINA's response to these particular requests and LINA continues to maintain its objections to these requests.

On February 23, 2007, Plaintiff's counsel provided LINA's counsel with a Notice for the 30(b)(6) deposition of LINA on March 7, 2007. <u>Deposition Notice of LINA</u>, attached hereto as Exhibit D. As explained below, the Deposition Notice of LINA contains a number of topics that are over broad, irrelevant and not reasonably calculated to lead to admissible evidence, including, topics relating to LINA's claims processes, the position and training of every person having any connection to Plaintiff's claim, interpretations of all provisions in any policy ever issued to Mail-Well, and the distribution of Plan documents. See Exhibit D at Schedule A. The Deposition Notice of LINA also requested production of: 1) all documents requested in

Plaintiff's First Request for Production of Documents that were objected to and not produced; and 2) LINA's claims procedure manual.  See Exhibit D at Schedule B.

On February 28, 2007, counsel for the parties discussed LINA's objections to the deposition notice.  Plaintiff's counsel conceded that he was probably not entitled to documents and information regarding other claimants and/or insureds and would not seek them.[1]  LINA's counsel indicated that it would be willing to produce a witness prepared to testify to Plaintiff's claim but continues to object to the other topics and documents sought.

## ARGUMENT

**I.     THE COURT MUST LIMIT THE DISCOVERY SOUGHT BY PLAINTIFF TO INFORMATION AND DOCUMENTS RELATED TO THE ONLY ISSUE IN THIS CASE – WHETHER OR NOT PLAINTIFF IS ELIGIBLE FOR AND ENTITLED TO BENEFITS UNDER THE PLAN**

Plaintiff seeks discovery well beyond the fact that he seeks to prove in this case – that he is eligible for and entitled to benefits under the terms of the Plan.  As indicated above, LINA agrees to produce a witness prepared to testify about the contents of Plaintiff's claim file and facts learned by LINA in the claims process concerning Plaintiff's eligibility for and entitlement to benefits under the terms of the Plan.  The only thing LINA requests here is that the Court limit the discovery sought by Plaintiff from LINA to topics and documents that are relevant and specific to Plaintiff's claim.

**A.     THE ONLY ISSUE BEFORE THIS COURT IS WHETHER OR NOT PLAINTIFF IS ELIGIBLE FOR AND ENTITLED TO BENEFITS UNDER THE PLAN**

This case involves a claim for long-term disability benefits under an ERISA Plan. Complaint at ¶ 4.  The parties agree that this case will be reviewed *de novo*.  Stipulation to the

---

[1] Based on Plaintiff's counsel's representation that he would not seek information regarding other claimants/insureds, LINA is not seeking a protective order for related information and documents at this time.

Standard of Review (Docket No. 21).  In benefit cases subject to *de novo* review, where the administrator has made a decision, the Court's review is generally limited to the record before the administrator at the time the decision was made and the Court determines, based on the record, whether or not the plaintiff is entitled to benefits under the terms of the plan.  See Orndorf v. Paul Revere Life Insurance Company, 404 F.3d 510 (1st Cir. 2005).

In this case, however, there was no final administrative decision, the administrative record is incomplete and the parties are engaged in discovery.[2]  Courts have varied in their treatment of similar cases where the record is lacking, at times remanding to the administrator for reconsideration and at other times considering limited evidence obtained during discovery in order to make a de novo determination.  See e.g. Krodel v. Bayer Corporation, 345 F.Supp.2d 110 (D.Mass. 2004)(remanded for reconsideration where the record was lacking as a result of a procedurally-inadequate, out-of-court review process); Jebian v. Hewlett-Packard Co. Employee Benefits, 349 F.3d 1098, 1110 (9th Cir. 2003)(allowing discovery where additional evidence is necessary to conduct an adequate *de novo* review).

Thus, absent remand, in which case there is no discovery, the parties must limit their discovery to the information necessary for the court to conduct an adequate *de novo* review to determine whether or not Plaintiff is eligible for and entitled to benefits under the Plan.

The Court's *de novo* review of Plaintiff's claim for benefits will require the Court to determine whether or not Plaintiff is eligible for and entitled to benefits under the Plan.  The Plan allows for participation in the Plan by eligible employees.  Eligible employees, as defined by the

---

[2] LINA did not make a determination with respect to Plaintiff's appeal.  Complaint at ¶ 16. Consequently, Plaintiff's claim was deemed denied pursuant to the 1984 regulations and Plaintiff was entitled to file this suit.  29 C.F.R. § 2560.503-1(e)(2), 1984 version.  The 1984 regulations apply to all claims filed before January 1, 2002, when the Department of Labor's amended regulations when into effect.  65 Fed. Reg. 70246.  Because Plaintiff's claim was filed in 2001, the 1984 regulations, and not the amended regulations, apply to this case.

Plan are, "all active, Full-time union-free hourly and Salaried Employees of the Employer and affiliated companies working the regularly scheduled full-time hours, but not less than 35 hours per week." <u>Plan</u> at 3.  Eligible employees are entitled to benefits if they are Disabled under the terms of the Plan.  An eligible employee is considered Disabled if:

> Solely because of Injury or Sickness, he or she is either:
> 1.     unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or
> 2.     unable to earn 80% or more of his or her Indexed Covered Earnings.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
> 1.     unable to perform all the material duties for any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
> 2.     unable to earn 80% or more of his or her Indexed Covered Earnings.

<u>Plan</u> at 4.

The specific issues that this Court will have to decide are whether:  1) Plaintiff was an active, full-time employee who was working at least 35 hours for a week for Mail-Well at the time he ceased working; 2) whether Plaintiff ceased working "due to" illness or sickness; and 3) whether due to such illness or sickness, Plaintiff was "unable to perform all of the material duties of his or her Regular Occupation."

This ERISA case does not involve an adjudication of LINA's claims processes.  Consequently, what LINA thought, did or didn't do, should or should not have done, during the claims handling process is irrelevant.  As such, this claim has nothing to do with LINA's claims processes, the relationship between LINA and Mailwell, or Plan information distribution and such information is not necessary for the Court to conduct an adequate *de novo* review of Plaintiff's claim for benefits.

**B.**     **LINA'S CLAIMS PROCESSES ARE IRRELEVANT AND NOT REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE**

As explained in Section A above, the issue in this case is whether Plaintiff was eligible for and entitled to benefits under the terms of the Plan.  This case is not an adjudication of the LINA's claims handling or claims handling procedures.   In fact, whether or not LINA's claims handling was exemplary is absolutely immaterial to both Plaintiff's claim that he is entitled to benefits and LINA's defense that he is not.  Due to the fact that LINA did not make a final decision in this case and because Plaintiff's claim is subject to de novo review, Plaintiff's claim for benefits is most analogous to a breach of contract action in which the Court must determine whether or not Plaintiff was eligible for and entitled to relief under the terms of a contract.

Numerous courts have found that the discovery of information and documents related to an insurer's claims processes and the quality of the insurer's claims handling is irrelevant and not likely to lead to the discovery of admissible evidence with regard to Plaintiff's individual breach of contract claim.  See e.g. Doe v. Provident Life and Accident Insurance Company, 1997 WL 213796*3 (E.D.Pa. 1997)(granting the insurer's motion in limine to exclude evidence of claims handling, claims processes and other insureds as irrelevant); North River Insurance Company v. Greater New York Mutual Insurance Company, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995)(Court denied motion to compel discovery of prior bad faith actions as irrelevant and not reasonably calculated to lead to admissible evidence).

As is the case here, where the inquiry is limited to whether a particular Plaintiff is eligible and entitled to benefits under a particular Plan, the insurer's claims processes and the quality of its claims handling are entirely irrelevant.

**C.    THE MAJORITY OF THE TOPICS IDENTIFIED BY PLAINTIFF ARE
IRRELEVANT AND NOT REASONABLY CALCULATED TO LEAD TO
ADMISSIBLE EVIDENCE AND/OR ARE OVER BROAD**

Plaintiff seeks to depose LINA on a number of irrelevant and inordinately overbroad

topics.  As noted above, LINA agrees to produce a witness prepared to testify about the contents

of Plaintiff's claim file and the facts learned by LINA in the claims process concerning Plaintiff's

eligibility for and entitlement to benefits under the terms of the Plan.  The topics contained in the

Deposition Notice of LINA to which LINA objects and the specific related objections are as

follows:

1.      The entire claims procedure at CIGNA Disability Management Solutions, CIGNA Group
Insurance, Life Insurance Company of North America, or any other entity handling disability
insurance claims on policies written by Life Insurance Company of North America.

**Objection:**   For the reasons set forth in Section B above, LINA's claims procedure is irrelevant

to Plaintiff's claim and Topic No. 1 is not reasonably calculated to lead to admissible evidence.

Moreover, Topic No. 1 is inordinately over broad and would require inquiry into the claims

handling procedures for every single policy LINA or any of its affiliates has ever issued.  In

addition to being entirely irrelevant to this claim, preparing a witness to respond to this topic

would be impossible.

2.      The hierarchical structure of any claims processing personnel at and within CIGNA
Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North
America, and any other entity handling disability insurance claims in policies written by Life
Insurance Company of North America, from January 1, 1999 through the present.

**Objection:**   For the reasons set forth in Section B above, LINA's claims procedure and

consequently the hierarchical structure of claims processing personnel is irrelevant to Plaintiff's

claim and Topic No. 2 is not reasonably calculated to lead to admissible evidence.  In addition, it

is over broad as it requires the hierarchical structure of every claims office of LINA and its

affiliates.

8

3.      The relationship between the claims procedure at CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, and any and all regulations promulgated by any agency of the government of the United States for handling or processing claims for benefits subject to ERISA or any laws or regulations related thereto.

**Objection:**  For the reasons set forth in Section B above, LINA's claims procedures and

consequently the relationship between the claims procedures and ERISA is irrelevant to

Plaintiff's claim and Topic No. 3 is not reasonably calculated to lead to admissible evidence.  In

addition, like Topic No. 2, it is over broad.

4.      The relationship between and among CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America.

**Objection:**  For the reasons set forth in Section B above, LINA's claims procedures are

irrelevant to Plaintiff's claim and Topic No. 4 is not reasonably calculated to lead to admissible

evidence.  In addition it is over broad; however, LINA will provide a witness prepared to testify

to the relationship between any entities related to LINA that handled Plaintiff's claim.

5.      The actual claims process by CIGNA Disability Management Solutions, CIGNA Group Insurance, or Life Insurance Company of North America, with respect to Thomas Brennan's claim for disability benefits, including short term and long-term benefits.  This includes, but is not limited to, each action taken by anyone at CIGNA Disability Management Solutions, CIGNA Group Insurance, or Life Insurance Company of North America, the reasoning and rationale behind each such action, the specific justification for each such action, and the person or persons who made the ultimate decision for each action taken at each step of the claims process.

**Objection:**  For the reasons set forth in Section B above, LINA's claims process is irrelevant to

Plaintiff's claim and Topic No. 5 is not reasonably calculated to lead to admissible evidence.  In

addition, this request is over broad in that it seeks information on each and every action taken by

anyone with respect to Plaintiff's claim.  This would include everyone that ever touched

Plaintiff's claim, including the people that copied the claim file, or happened to answer the

phone one time when Plaintiff called.  LINA will produce a witness prepared to testify to the

contents of Plaintiff's claim file and the facts learned by in LINA during the claims process

concerning Plaintiff's eligibility for and entitlement to benefits under the terms of the Plan.

7.      The position, training, experience, role, and actions of each and every person who handled in any way any part of Thomas Brennan's claim for disability benefits, including short term and long term benefits, including but not limited to any person whose name appears in any document produced by Life Insurance Company of North America in response to Thomas Brennan's requests for production of documents promulgated in this action.

**Objection:**  For the reasons set forth in Section B above, LINA's claims process is irrelevant to

Plaintiff's claim and Topic No. 7 is not reasonably calculated to lead to admissible evidence.  In

addition, this request is over broad in that it seeks information regarding anyone who ever

touched Plaintiff's claim file.  This would include the people that copied the claim file, or

happened to answer the phone one time when Plaintiff called.

8.      The rules and requirements for handling claims for disability insurance benefits provided by any policy subject to ERISA, or any law or regulation promulgated in relation thereto.

**Objection:**  For the reasons set forth in Section B above, LINA's claims procedures, including

the rules and requirements for handling claims, is irrelevant to Plaintiff's claim and Topic No. 8

is not reasonably calculated to lead to admissible evidence.  In addition, this request is over

broad as it is not specific to the policy under which Plaintiff makes his claim, but requires

inquiry into every policy subject to ERISA that LINA has ever issued.

9.      The working relationship between CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, and Mail-Well (a/k/a Mail–Well I Corporation) with respect to underwriting any benefit insurance plan for Mail-Well employees, from 1995 through the present.

**Objection:**  For the reasons set forth in Section A above, the relationship between claims and

underwriting is irrelevant to Plaintiff's claim and Topic No. 9 is not reasonably calculated to lead

to admissible evidence.

10.     The working relationship between CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, and Mail-Well (a/k/a Mail–Well I Corporation) with respect to processing claims for any insurance benefit for Mail-Well employees, from 1995 through present.

**Objection:**  For the reasons set forth in Section B above, LINA's claims procedures, including

the rules and requirements for handling claims, is irrelevant to Plaintiff's claim and Topic No. 10

is not reasonably calculated to lead to admissible evidence.

11.     Any disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present.  This includes but is not limited to the interpretation, and the basis of the interpretation, of any provision within any such policy.

**Objection:**  As discussed in Section A above, the Court will review Plaintiff's claim de novo –

not under the arbitrary and capricious standard.  The Court will interpret the policy to determine

whether Plaintiff is eligible and entitled to long-term disability benefits and LINA's

interpretation of the plan provisions is irrelevant to Plaintiff's claim.

12.     Any changes to any disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present.

**Objection:**  As discussed in Section A above, the Court will review Plaintiff's claim de novo

and will determine whether Plaintiff is eligible and entitled to long-term disability benefits under

the terms of the Plan in effect when Plaintiff ceased working in May 2001.  Consequently, any

changes made to the Plan are irrelevant.

13.     How any changes to disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present, were communicated to Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) and to the latter's employees.

**Objection:**  As discussed in Section A above, the Court will review Plaintiff's claim de novo

and will determine whether Plaintiff is eligible and entitled to long-term disability benefits under

the terms of the Plan in effect when Plaintiff ceased working in May 2001.  Consequently, any

changes made to the Plan and their conveyance to Mail-Well's employees are irrelevant.

14.     Any summary of benefits of any disability insurance plan provided by Life Insurance
Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now
known as CENVEO) from January 1, 1995, through the present, whether or not drafted or
otherwise prepared by Life Insurance Company of North America.

**Objection:**  As discussed in Section A above, the Court will review Plaintiff's claim de novo

and will determine whether Plaintiff is eligible and entitled to long-term disability benefits under

the terms of the Plan in effect when Plaintiff ceased working in May 2001.  Consequently, the

only summary relevant to Plaintiff's claim would be the summary in effect when Plaintiff ceased

working in May 2001 and Topic No. 14 is over broad.

        As discussed above, the topics contained in the Deposition Notice of LINA are irrelevant

and over broad and this Court must limit the deposition of LINA's employees to a 30(b)(6) of

LINA on the contents of the claim file and the issue of Plaintiff's eligibility and entitlement to

benefits under the Plan.

**D.     LINA'S CLAIMS MANUAL IS A PROTECTED TRADE SECRET AND THE
        DOCUMENTS REQUESTED BY PLAINTIFF IN THE DEPOSITION NOTICE
        ARE IRRELEVANT AND NOT REASONABLY CALCULATED TO LEAD TO
        ADMISSIBLE EVIDENCE**

        Similarly, the documents Plaintiff requests in his Deposition Notice of LINA in lieu of

filing a Motion to Compel, also have to do with LINA's claims processes and for the reasons set

forth in section B above, are irrelevant to Plaintiff's claim and not reasonably calculated to lead

to admissible evidence.  The requested documents also include LINA's "claims procedure

manual, colloquially known as the "Book of Knowledge" ("Claims Manual").  Exhibit D at

Schedule B.  The Court must grant LINA's Motion for a Protective Order with respect to the

requested documents because: 1) LINA's Claims Manual is a protected trade secret; and 2) they are irrelevant and not reasonably calculated to lead to admissible evidence.

Rule 26(c)(7) specifically authorizes the Court to issue a protective order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7). "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736 (1970).

LINA's Claims Manual constitutes LINA's entire claims handling methodology. Affidavit of Richard Lodi, attached as Exhibit E, at ¶ 3. The information contained in LINA's Claims Manual is kept highly confidential by LINA, is not disclosed to others, and gives LINA a competitive advantage over its competitors. Id. at ¶ 4. The disclosure of the information contained in these documents would cause significant business harm to LINA, as its competitors would have access to LINA's claim handling procedures and the rationale. Id. at ¶ 5. Based on the foregoing, it is clear that LINA's Claims Manual constitutes a highly confidential trade secret and the Court should grant LINA's Motion for a Protective Order.

As discussed in Section B above, the discovery sought by Plaintiff regarding LINA's claims processes and the quality of the handling of Plaintiff's claim is entirely irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's Requests for Production of Documents relating to LINA's claims processes are as follows:

3.    All documents concerning LINA's disability insurance claims process, including but not limited to, the insured's report of a claim, your review of the report, your initiation of the claims process and your handling of the claim through the final stage of the claims process.

4.    All documents concerning your disability insurance claims appeals process, including the insured's report of an appeal of your decision on a claim, your review of the report, your

initiation of the appeals process and your handling of the appeal through he final stage of the appeals process.

22.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability claim by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any person acting or purporting to act on your behalf.

23.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

24.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability claim by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

25.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any person acting or purporting to act on your behalf.

26.    All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning your policy to obtain medical records during a disability clam and/or appeal process.

27.    All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning impairments in functionality when assessing a disability claim.

Because LINA's Claims Manual is a protected trade secret and because Plaintiff's

Requests for Documents regarding LINA's claims process and the quality of the handling of

Plaintiff's claim are not reasonably calculated to lead to admissible evidence, LINA requests that

the Court bar Plaintiff from obtaining LINA's Claims Manual and the discovery sought in

Plaintiff's Requests for Documents Nos. 3, 4, 14, 22-27, 33-35.

E.    **THE DISCOVERY PLAINTIFF SEEKS WITH RESPECT TO THE DISTRIBUTION OF THE PLAN IS IRRELEVANT AND NOT REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE**

Plaintiff also seeks discovery relating to the distribution of the Plan. Plaintiff's discovery requests are as follows:

### Deposition Notice of LINA

13.    How any changes to disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present, were communicated to Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) and to the latter's employees.

### Document Requests Relating to the General Distribution of the Disability Plan

29.    All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information is generally distributed

30.    All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning the disability plan distributed to Northeastern Envelope employees.

31.    All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information was distributed to Northeastern Envelope employees.

First, there are no allegations in the Complaint relating to the distribution of the Plan.

Second, like the claims processes and quality of claims handling discussed above, the

distribution of the Plan has absolutely no relevance with respect to the Court's *de novo*

determination of whether or not Plaintiff is eligible for and entitled to benefits under the Plan.

Finally, even if Plaintiff asserted a claim related to the distribution of the Plan and Plan

information, it would not be sustainable against LINA because the obligation to distribute the

Plan and/or SPD falls on the Plan Administrator, in this case the employer, not on LINA.  29

U.S.C. § 1021.  Consequently, Plaintiff's discovery requests relating to the distribution of the

Plan and Plan information are entirely irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  As such, LINA requests that this Court bar Plaintiff from obtaining the discovery requested in Plaintiff's Requests for Documents Nos. 29-31 and Deposition Topic No. 13.

## **<u>CONCLUSION</u>**

As discussed above, because the only issue in this case is whether or not Plaintiff is eligible for and entitled to benefits under the terms of the Plan, the discovery sought by Plaintiff is almost entirely irrelevant to this case and not likely to lead to admissible evidence.  Moreover, LINA's Claims Manual is a protected trade secret.  Accordingly, the Court should grant LINA's request for a protective order.

Respectfully Submitted,

Defendant, Life Insurance Company of
North America,

By its Attorneys:

CREVIER & RYAN, LLP.

/s/Katherine R. Parsons
David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO # 657280
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel:  413-787-2400
Facsimile:  413-781-8235
Emails: dcrevier@crevierandryan.com
        kparsons@crevierandryan.com

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

I certify that the attorneys in this case have conferred and attempted in good faith to resolve or narrow the issues contained in this motion.

<u>/s/Katherine R. Parsons</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served on counsel to all other parties to this action by first class U.S. mail, postage prepaid, this 5th day of March, 2007.

<u>/s/Katherine R. Parsons</u>

# Exhibit A

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603 TDD (800) 552-5744
A STOCK INSURANCE COMPANY

**GROUP POLICY**

| | |
|---|---|
| POLICYHOLDER: | Mail-Well Corporation |
| POLICY NUMBER: | LK-007945 |
| POLICY EFFECTIVE DATE: | February 24, 1994 |
| POLICY REWRITE DATE: | January 1, 2001 |
| POLICY ANNIVERSARY DATE: | January 1 |

This Policy is a continuation of and replaces the same numbered policy that became effective February 24, 1994. Any different benefits provided by this Policy become effective on its Rewrite Date shown above. Any different benefits will not affect benefits payable for claims incurred before the Policy Rewrite Date.

This Policy describes the terms and conditions of coverage. It is issued in Colorado and shall be governed by its laws. The Policy goes into effect on the Policy Effective Date, 12:01 a.m. at the Policyholder's address.

In return for the required premium, the Insurance Company and the Policyholder have agreed to all the terms of this Policy.

Robert J. Upton, Secretary

Michael W. Bell, President

TL-004701

O/O v-I

# TABLE OF CONTENTS

SCHEDULE OF BENEFITS ........................................................... 3

SCHEDULE OF BENEFITS FOR CLASS 1 ................................... 4

ELIGIBILITY FOR INSURANCE ................................................. 7

EFFECTIVE DATE OF INSURANCE ........................................... 7

TERMINATION OF INSURANCE ................................................ 7

CONTINUATION OF INSURANCE .............................................. 8

DESCRIPTION OF BENEFITS .................................................... 8

EXCLUSIONS ............................................................................ 13

CLAIM PROVISIONS ................................................................ 14

ADMINISTRATIVE PROVISIONS ............................................. 15

GENERAL PROVISIONS ........................................................... 17

DEFINITIONS ........................................................................... 18

SCHEDULE OF AFFILIATES .................................................... 21

## SCHEDULE OF BENEFITS

**Premium Due Date**            Premiums are due in arrears on the date coinciding with the day of the Policy
                               Anniversary Date or the last day of the month, if earlier.

**Participation Requirements**  The greater of 75% of Eligible Employees or a minimum of 10 Employees.

**Classes of Eligible Employees**

Class 1  All active, Full-time union-free hourly and salaried Employees of the Employer and affiliated companies
         working the regularly scheduled full-time hours, but not less than 35 hours per week.

## SCHEDULE OF BENEFITS FOR CLASS 1

### Eligibility Waiting Period

For Employees hired on or before the Policy Effective Date:      No Waiting Period

For Employees hired after the Policy Effective Date:      First day of the month following 30 continuous days of Active Service

### Definition of Disability/Disabled

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
1.    unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or
2.    unable to earn 80% or more of his or her Indexed Covered Earnings.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:
1.    unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
2.    unable to earn 80% or more of his or her Indexed Covered Earnings.

The Insurance Company will require proof of earnings and continued Disability.

### Definition of Optimum Ability
1.    for the first 24 months that benefits are payable, the greatest extent of work the Employee is able to do in his or her Regular Occupation;
2.    after 24 months, the greatest extent of work the Employee is able to do in any occupation based on education, training or experience.

The Employee's ability to work is based on the following:
1.    medical evidence submitted by the Employee;
2.    consultation with the Employee's Physician;
3.    evaluation of the Employee's ability to work by not more than three independent experts if required by the Insurance Company; and
4.    an offer of employment that meets the Employee's capacity to do the work is made by an employer.

There is no cost to the Employee for evaluation by an independent expert when required by the Insurance Company to determine Optimum Ability.

The independent expert must be:
1.    licensed, registered or certified as required by the laws of the state in which the evaluation is made; and
2.    acting within the scope of that license, registration or certificate.

### Definition of Covered Earnings
Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins.  It includes earnings received from commissions but not bonuses, overtime pay or any other extra compensation. For Employees with less than one year of service, wages are annualized.  Covered Earnings are determined initially on the date an Employee applies for coverage.  A change in amount of Covered Earnings is effective on the date of the change, if the Employer gives us written notice of the change and the required premium is paid.

4

For Employees who are paid wholly or in part by commissions, Covered Earnings are determined at the beginning of the plan year and are calculated from the prior year's annual base salary (if applicable) plus commissions reported but not including bonuses, overtime pay or any other extra compensation. If the Employee was not employed by the Employer for the entire prior year, commissions will be averaged for the 12 months just prior to the date Disability begins, or the months employed, if less than 12 months.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

| | |
|---|---|
| **Elimination Period** | 180 days |
| **Gross Disability Benefit** | The lesser of 60% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit. |
| **Maximum Disability Benefit** | $10,000 per month |
| **Minimum Disability Benefit** | $100 per month |

**Disability Benefit Calculation**
The Monthly Disability Benefit for any month the Employee is Disabled is the Gross Disability Benefit minus Other Income Benefits and the Calculation for Optimum Ability.

The Calculation for Optimum Ability is the earnings the Employee could earn if working at Optimum Ability, minus Disability Earnings.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

**Work Incentive Benefit Calculation**
An Employee may work for wage or profit while Disabled. In any month in which the Employee works and a Disability Benefit is payable, the Work Incentive Benefit Calculation applies. It is determined as follows:

1.  For each month during the first 24 months that Disability Benefits are payable, the amount of the Work Incentive Benefit equals (a) minus (b).
    (a)  equals (i) minus (ii), but not more than the Gross Disability Benefit shown in the Schedule of Benefits.
        (i)  is 100% of Indexed Covered Earnings.
        (ii)  is the sum of Other Income Benefits, including Disability Earnings.
    (b)  equals the Calculation for Optimum Ability.

The Calculation for Optimum Ability is the earnings an Employee could earn if working at Optimum Ability, minus Disability Earnings.

2.  After those first 24 months, the amount of benefit to be paid equals (c) minus (d).
    (c)  equals the Gross Disability Benefit minus the sum of 50% of Disability Earnings and 100% of the remaining Other Income Benefits.
    (d)  equals the Calculation for Optimum Ability.

The Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability.

No Disability Benefits will be paid, and insurance will end if the Insurance Company determines the Employee is able to work under a Transitional Work Arrangement or other modified work arrangement and the Employee refuses to do so without Good Cause.

**Additional Benefits**

*Survivor Benefit*

      Amount of Benefit:              100% of the sum of the last full Disability Benefit plus any current earnings by which the Disability Benefit was reduced for that month.

      Maximum Benefit Period        A single lump sum payment equal to 3 monthly Survivor Benefits.

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

**Initial Premium Rates**

      $.44 per $100 of Covered Payroll

Covered Payroll for an Employee will mean his or her Covered Earnings for the insurance month prior to the date the determination is made.  However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $16,667.

TL-004774

6

## ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed and within one year becomes a member of an eligible class.

TL-004710

## EFFECTIVE DATE OF INSURANCE

An Employee who is required to contribute to the cost of this insurance may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and the Insurance Company. The effective date of this insurance depends on the date coverage is elected.

Insurance for an Employee who applies for insurance within 31 days after he or she becomes eligible is effective on the latest of the following dates.
1.     The Policy Effective Date.
2.     The date payroll deduction is authorized.
3.     The date the Insurance Company receives the Employee's completed enrollment form.

If an Employee's enrollment form is received more than 31 days after he or she is eligible for this insurance, the Insurability Requirement must be satisfied before this insurance is effective. If approved, this insurance is effective on the date the Insurance Company agrees in writing to insure the Employee.

If an Employee is not in Active Service on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

## TERMINATION OF INSURANCE

An Employee's coverage will end on the earliest of the following dates:
1.     the date the Employee is eligible for coverage under a plan intended to replace this coverage;
2.     the date the Policy is terminated;
3.     the date the Employee is no longer in an eligible class;
4.     the day after the end of the period for which premiums are paid;
5.     the date the Employee is no longer in Active Service;
6.     the date benefits end for failure to comply with the terms and conditions of the Policy.

Disability Benefits will continue for an Employee receiving Disability Benefits when the Policy terminates, if he or she remains disabled and meets the requirements of the Policy. Any later period of Disability, regardless of cause, that begins when the Employee is eligible under another group disability coverage provided by any employer, will not be covered.

TL-007505.00

## CONTINUATION OF INSURANCE

Disability Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, whichever occurs first.

TL-004716

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits to each class of Insureds.

**Disability Benefits**
The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. The Employee must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy. He or she must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid. The Disability Benefit is shown in the Schedule of Benefits.

The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.

**Elimination Period**
The Elimination Period is the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes.

**Continuity of Coverage**
The following provisions will apply to any Employee who was insured under a Prior Plan.

The Elimination Period under this Policy will be waived for a Disability which begins while the Employee is insured under this Policy if all of the following conditions are met:
1.  the Disability results from the same or related causes as a Disability for which benefits were payable under the Prior Plan;
2.  benefits are not payable for the Disability under the Prior Plan solely because it is not in effect;
3.  an Elimination Period would not apply to the Disability if the Prior Plan had not ended;
4.  the Employee was in Active Service for more than 14 consecutive days while covered under this Policy; and
5.  the Disability begins within 6 months of the Employee's return to Active Service.

Benefits will be determined based on the lesser of: (1) the amount of the gross disability benefit under the Prior Plan and any applicable maximums; or (2) those provided by this Policy.

Except for any amount of benefit in excess of a Prior Plan's benefits, the Pre-existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied under the Prior Plan's pre-existing condition limitation. The Pre-existing Condition Limitation will not apply to any increases in benefits effective on the Policy Rewrite Date for employees who were insured on December 31, 2000 under Policy No. LK-7945 or Policy No. LK-8368 issued to the Policyholder by the Life Insurance Company of North America.

If benefits are payable under the Prior Plan for the Disability, no benefits are payable under this Policy.

8

**Disability Benefit Calculation**
The Disability Benefit Calculation is shown in the Schedule of Benefits. Monthly Disability Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month. If an Employee is working while Disabled, the Disability Benefit Calculation will be the Work Incentive Benefit Calculation.

**Work Incentive Benefit Calculation**
The Work Incentive Benefit Calculation is shown in the Schedule of Benefits. An Employee may work for wage or profit while Disabled. In any month in which the Employee works and a Disability Benefit is payable, the Work Incentive Benefit Calculation applies.

The Insurance Company will, from time to time, review the Employee's status and will require satisfactory proof of earnings and continued Disability.

**Minimum Benefit**
The Insurance Company will pay the Minimum Benefit shown in the Schedule of Benefits despite any reductions made for Other Income Benefits. When Disability Benefits are reduced in order to recover any overpayment, any minimum payment will be applied to any overpayment due to the Insurance Company.

**Other Income Benefits**
An Employee for whom Disability Benefits are payable under this Policy may be eligible for benefits from Other Income Benefits. If so, the Insurance Company may reduce the Disability Benefits by the amount of such Other Income Benefits.

Other Income Benefits include:
1.  any amounts received (or assumed to be received*) by the Employee or his or her dependents under:
    - the Canada and Quebec Pension Plans;
    - the Railroad Retirement Act;
    - any local, state, provincial or federal government disability or retirement plan or law payable for Injury or Sickness provided as a result of employment with the Employer;
    - any work loss provision in mandatory "No-Fault" auto insurance;
    - any workers' compensation, occupational disease, unemployment compensation law or similar state or federal law payable for Injury or Sickness arising out of work with the Employer, including all permanent and temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted;
2.  any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on his or her own behalf or for his or her dependents; or which his or her dependents receive (or are assumed to receive*) because of his or her entitlement to such benefits;
3.  any Retirement Plan benefits funded by the Employer. "Retirement Plan" means any defined benefit or defined contribution plan sponsored or funded by the Employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan;
4.  any proceeds payable under any franchise or group insurance or similar plan. If other insurance applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay for its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies;
5.  any amounts paid because of loss of earnings or earning capacity through settlement, judgment, arbitration or otherwise, where a third party may be liable, regardless of whether liability is determined;
o.  any Disability Earnings. If the Work Incentive Benefits Calculation applies to the Employee, the Insurance Company will only reduce the Employee's Disability Benefits by Disability Earnings to the extent provided under the Employee's Work Incentive Benefit Calculation.

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law because of an Employee's entitlement to benefits.

*See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

Any increase in Other Income Benefits during a period of Disability due to a cost of living adjustment will not be considered in calculating the Employee's Disability Benefits after the first reduction is made for any Other Income Benefits. This section does not apply to any cost of living adjustment for Disability Earnings.

*Lump Sum Payments*

Other Income Benefits or earnings paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated over five years.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (and his or her dependents, if applicable) are receiving benefits for which they are eligible from Other Income Benefits. The Insurance Company will reduce the Employee's Disability Benefits by the amount from Other Income Benefits it estimates are payable to the Employee and his or her dependents.

The Insurance Company will waive Assumed Receipt of Benefits, except for Disability Earnings for work the Employee performs while Disability Benefits are payable, if the Employee:

          provides satisfactory proof of application for Other Income Benefits;
2.     signs a Reimbursement Agreement;
3.     provides satisfactory proof that all appeals for Other Income Benefits have been made unless the Insurance Company determines that further appeals are not likely to succeed; and
4.     submits satisfactory proof that Other Income Benefits were denied.

The Insurance Company will not assume receipt of any pension or retirement benefits that are actuarially reduced according to applicable law, until the Employee actually receives them.

The Insurance Company may limit its waiver of Assumed Receipt of Benefits if:
1.     there is a change in factors bearing on the risk assumed, including but not limited to a significant increase in time required by the party responsible for paying the Other Income Benefits to determine whether Other Income Benefits are payable; or
2.     any state or Federal law or regulation is amended so that it affects the Insurance Company's benefit obligations.

## Successive Periods of Disability

A separate period of Disability will be considered continuous:
1.     if it results from the same or related causes as a prior Disability for which benefits were payable; and
2.     if, after receiving Disability Benefits, the Employee returns to work in his Regular Occupation or a Qualified Alternative for less than 6 consecutive months; and
3.     if the Employee earns less than 80% of Indexed Covered Earnings during at least one month.

Any later period of Disability, regardless of cause, that begins when the Employee is eligible for coverage under another group disability plan provided by any employer will not be considered a continuous period of Disability.

For any separate period of disability which is not considered continuous, the Employee must satisfy a new Elimination Period.

# LIMITATIONS

**Mental Illness, Alcoholism and Drug Abuse Limitation**

The Insurance Company will pay Disability Benefits on a limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1. Alcoholism
2. Anxiety disorders
3. Delusional (paranoid) disorders
4. Depressive disorders
5. Drug addiction or abuse
6. Eating disorders
7. Mental illness
8. Somatoform disorders (psychosomatic illness)

If, before reaching his or her lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against his or her lifetime limit. The confinement must be for the Appropriate Care of any of the conditions listed above.

**Pre-Existing Condition Limitation**

The Insurance Company will not pay benefits for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A "Pre-existing Condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, consulted with a health professional, or took prescribed drugs or medicines, within 3 months immediately preceding the most recent effective date of insurance.

The Pre-existing Condition Limitation will apply to any added benefits or increases in benefits. This limitation will not apply to a period of Disability that begins after an Employee is covered for at least 12 months after his or her most recent effective date of insurance, or the effective date of any added or increased benefits.

# SOCIAL SECURITY ASSISTANCE

The Insurance Company may help the Employee in applying for Social Security Disability Income (SSDI) Benefits, and may require the Employee to file an appeal if it believes a reversal of a prior decision is possible.

The Insurance Company will reduce Disability Benefits by the amount it estimates the Employee will receive, if the Employee refuses to cooperate with or participate in the Social Security Assistance Program.

# RECOVERY OF OVERPAYMENT

The Insurance Company has the right to recover any benefits it has overpaid. The Insurance Company may use any or all of the following to recover an overpayment:

1. request a lump sum payment of the overpaid amount;
2. reduce any amounts payable under this Policy; and/or
3. take any appropriate collection activity available to it.

The Minimum Benefit amount will not apply when Disability Benefits are reduced in order to recover any overpayment.

If an overpayment is due when the Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-007500.06

11

## ADDITIONAL BENEFITS

**Rehabilitation During a Period of Disability**
If the Insurance Company determines that a Disabled Employee is a suitable candidate for rehabilitation, the Insurance Company may require the Employee to participate in a Rehabilitation Plan. The Insurance Company has the sole discretion to approve the Employee's participation in a Rehabilitation Plan and to approve a program as a Rehabilitation Plan.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

If an Employee fails to fully cooperate in all required phases of the Rehabilitation Plan without Good Cause, no Disability Benefits will be paid, and insurance will end.

**Spouse Rehabilitation Benefit**
While an Employee is Disabled, his or her Spouse may, at the option of the Insurance Company, be eligible to participate in a Spouse Rehabilitation Plan. To be eligible, the following conditions must be met:
1.   the Employee must be continuously Disabled for 12 months;
2.   his or her Spouse's earnings must be 60% or less than the Employee's Covered Earnings; and
3.   his or her Spouse must be determined by the Insurance Company to be a suitable candidate for rehabilitation.

"Spouse," as used in this provision, means the Employee's lawful Spouse living with him or her on the date the Employee's Disability begins. The Spouse Rehabilitation Plan will end if the Employee's Spouse is no longer living with the Employee.

The Spouse's Rehabilitation Plan may include, at the Insurance Company's discretion, payment of the Spouse's education expense, reasonable job placement expenses and moving expenses. It may also include family care expenses, if necessary, for his or her Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of his or her Spouse's earnings from participation in the Rehabilitation Plan. If his or her Spouse was working before the Spouse Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from his or her Spouse's participation in the Spouse Rehabilitation Plan.

TL-007501.00

**Conversion Privilege for Disability Insurance Benefits**
If an Employee's insurance ends because employment with the Employer ends, or an Employee is laid off or on an uninsured leave of absence, he or she may be eligible for conversion insurance.

To be eligible, an Employee must have been insured for Disability Benefits and actively at work for at least 12 straight months. If the Employee makes application for conversion insurance within 31 days after insurance under this Policy ends, conversion insurance will be effective as of the date insurance under this Policy ends. If an Employee makes application more than 31 days after insurance under this Policy ends, the Insurance Company will require the Employee to provide satisfactory evidence of good health at his or her own expense. Conversion insurance will be effective on the date the Insurance Company agrees in writing to insure him or her. An Employee must apply for conversion insurance within 62 days after insurance ends.

The benefits of the conversion plan will be those benefits offered at the time an Employee applies. The premium will be based on the rates in effect for conversion plans at that time.

Conversion insurance is not available if any of the following conditions apply:
1.     the Employee is retired or age 70 or older;
2.     the Employee is not in Active Service because of Disability;
3.     the Policy is canceled for any reason;
4.     the Employee is no longer in a Class of Eligible Employees, but is still employed by the Employer.

TL-007504.00

**Survivor Benefit**

The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable. The Employee must have been continuously Disabled before the first benefit is payable. These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse. If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children. If there are no Spouse and no Children, benefits will be paid to the Employee's estate.

"Spouse" means an Employee's lawful spouse. "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance. The term includes a stepchild living with the Employee at the time of his or her death.

TL-005107

## TERMINATION OF DISABILITY BENEFITS

Benefits will end on the earliest of the following dates:
1.     the date the Employee earns 80% or more of his or her Indexed Covered Earnings;
2.     the date the Insurance Company determines he or she is not Disabled;
3.     the end of the Maximum Benefit Period;
4.     the date the Employee dies;
5.     the date the Employee refuses, without Good Cause, to fully cooperate in all required phases of the Rehabilitation Plan;
6.     the date the Employee refuses, without Good Cause, to fully cooperate in a Transitional Work Arrangement;
7.     the date the Employee is no longer receiving Appropriate Care;
8.     the date the Employee fails to cooperate with the Insurance Company in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

Benefits may be resumed if the Employee begins to cooperate fully in the Rehabilitation Plan or a Transitional Work Arrangement within 30 days of the date benefits terminated.

TL-007502.00

## EXCLUSIONS

The Insurance Company will not pay any Disability Benefits for a Disability that results, directly or indirectly, from:
1.     suicide, attempted suicide, or self-inflicted injury while sane or insane.
2.     war or any act of war, whether or not declared.
3.     terrorism or active participation in a riot.
4.     Injury or Sickness while the Employee is serving on full-time active duty in any armed forces. If the Employee sends proof of service, the Insurance Company will refund pro rata the premium paid to cover the Employee during a period of such service.

5.    commission of a felony.
6.    the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

In addition, the Insurance Company will not pay Disability Benefits for any period of Disability during which the Employee is incarcerated in a penal or corrections institution.

TL-007503.00

## CLAIM PROVISIONS

### Notice of Claim

Written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by the Insurance Company, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's Name, the Policy Number and the claimant's name and address.

### Claim Forms

When the Insurance Company receives notice of claim, the Insurance Company will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, of the nature and extent of the loss.

### Claimant Cooperation Provision

Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

### Insurance Data

The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

### Proof of Loss

Written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, must be given not more than one year after that 90 day period. If written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, is provided outside of these time limits, the claim will be denied. These time limits will not apply while the person making the claim lacks legal capacity.

Written proof, or proof by any other electronic/telephonic means authorized by the Insurance Company, that the loss continues must be furnished to the Insurance Company at intervals required by us. Within 30 days of a request, written proof of continued Disability and Appropriate Care by a Physician must be given to the Insurance Company.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

**To Whom Payable**
Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company may, at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

**Physical Examination and Autopsy**
The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by the Insurance Company, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

**Time Limitations**
If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Insured will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 12 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period. However, the Insurance Company reserves the right to change the rates even during a period for which the rate is guaranteed if any of the following events take place.
1.       The terms of the Policy change.
2.       A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy.
3.       There is a change in the factors bearing on the risk assumed.

4.  Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation.

5.  The Insurance Company determines that the Employer has failed to promptly furnish any necessary information requested by the Insurance Company, or has failed to perform any other obligations in relation to the Policy.

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

## Reporting Requirements

The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

## Payment of Premium

The first premium is due on the Policy Effective Date.  After that, premiums will be due monthly unless the Employer and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the plan will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

## Notice of Cancellation

The Employer or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice.  If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

The Insurance Company may cancel the Policy as of any Premium Due Date if the participation requirements are not met.

## Policy Grace Period

A Policy Grace Period of 31 days will be granted for the payment of the required premiums under the Policy.  The Policy will be in force during the Policy Grace Period.  If the required premiums are not paid during the Policy Grace Period, insurance will end on the last Premium Due Date.  The Employer will be liable to the Insurance Company for any unpaid premium for the time the Policy was in force.

## Grace Period for the Insured

If the required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first.  If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

## Reinstatement of Insurance

An Employee's insurance may be reinstated if it ends because the Employee is on an unpaid leave of absence.

An Employee's insurance may be reinstated only if reinstatement occurs within 12 weeks from the date insurance ends due to an Employer approved unpaid leave of absence.  For insurance to be reinstated the following conditions must be met.

1.  An Employee must be in a Class of Eligible Employees.
2.  The required premium must be paid.
3.  A written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service.

Reinstated insurance will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation (if any) before insurance ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

## GENERAL PROVISIONS

**Entire Contract**
The entire contract will be made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds.

**Incontestability**
All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

After two years from an Insured's effective date of insurance, or from the effective date of any added or increased benefits, no such statement will cause insurance to be contested except for fraud or eligibility for coverage.

**Misstatement of Age**
If an Insured's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

**olicy Changes**
No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

**Workers' Compensation Insurance**
The Policy is not in lieu of and does not affect any requirements for insurance under any Workers' Compensation Insurance Law.

**Certificates**
A certificate of insurance will be delivered to the Employer for delivery to Insureds. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

**Assignment of Benefits**
The Insurance Company will not be affected by the assignment of an Insured's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided insurance under the Policy is in effect. This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

**Clerical Error**
A person's insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**gency**
The Employer and Plan Administrator are agents of the Employee for transactions relating to insurance under the Policy. The Insurance Company is not liable for any of their acts or omissions.

TL-004726

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**

An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.

1.    He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.

2.    The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

**Appropriate Care**

Appropriate Care means the determination of an accurate and medically supported diagnosis of the Employee's Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of the Disability that conforms to generally accepted medical standards, including frequency of treatment and care.

**Consumer Price Index (CPI-W)**

The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

**Disability Earnings**

Any wage or salary for any work performed for any Employer during the Employee's Disability, including commissions, bonus, overtime pay or other extra compensation.

**Employee**

For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is insured under the Policy.

**Employer**

The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as an agent of the Insured for transactions relating to this insurance. The actions of the Employer shall not be considered the actions of the Insurance Company.

**Full-time**

Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

**Good Cause**

A medical reason preventing participation in the Rehabilitation Plan or in a Transitional Work Arrangement. Satisfactory proof of Good Cause must be provided to the Insurance Company.

**Indexed Covered Earnings**

For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:

1.      10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.      the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Injury**

Any accidental loss or bodily harm which results directly and independently of all other causes from an Accident.

**Insurability Requirement**

An eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

**Insurance Company**

The Insurance Company underwriting the Policy is named on the Policy cover page.

**Insured**

A person who is eligible for insurance under the Policy, for whom insurance is elected, the required premium is paid and coverage is in force under the Policy.

**Physician**

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

**Prior Plan**

The Prior Plan refers to the plan of insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date.

**Qualified Alternative**

An occupation that meets all of the conditions that follow:

1.      the material duties of the occupation can be performed by the Employee based on his or her training, experience or education;
2.      it is within the same geographic area as the Regular Occupation the Employee holds with the Employer on the date the Employee's Disability begins;
3.      a job in that occupation is offered to the Employee by the Employer; and
4.      the wages for that occupation, including commissions and bonus are 80% or more of the Employee's Indexed Covered Earnings.

**Regular Occupation**

The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.

**Rehabilitation Plan**

A professionally developed, written plan designed to enable the Employee to return to work. The Rehabilitation Plan will consist of one or more of the following phases:

1.  assessment;
2.  rehabilitation, under which the Insurance Company may provide, arrange or authorize educational, vocational or physical rehabilitation or other appropriate services;
3.  work, which may include modified work, Transitional Work Arrangements, and work on a part-time basis.

**Sickness**

Any physical or mental illness.

**Transitional Work Arrangement**

Work at an occupation for wage or profit offered to the Employee by any employer if all the following conditions are met:

1.  the sum of wages, commissions, bonus and other compensation for that work is 20% or more of the Employee's Indexed Covered Earnings;
2.  at the time the work is offered, the Employee can perform, with or without accommodation, some or all of the material duties of that occupation; and
3.  the Employee is Disabled.

TL-007500.06

## SCHEDULE OF AFFILIATES

The following affiliates are covered under the Policy as of January 1, 2001.

Affiliate Name

   Mail-Well Label
   Mail-Well PrintXcel
   Mail-Well Commercial Printing
   Mail-Well Envelope
   Mail-Well Direct Mail

TL-004776

### LIFE INSURANCE COMPANY OF NORTH AMERICA
### PHILADELPHIA, PENNSYLVANIA

We, Mail-Well Corporation, whose main office address is Englewood, CO, hereby apply to the Life Insurance Company of North America for Policy Number LK-007945.

We approve and accept the terms of this Policy.

This application is to be signed in duplicate. One part is to be attached to the Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Policy.

<div align="center">

Mail-Well Corporation
(Full or Corporate Name of Applicant)
</div>

Signed at_____    By _____

<div align="right">(Signature and Title)</div>

On_____    Witness _____

<div align="center">(To be signed by Licensed Resident Agent where required by law)</div>

TL-004778

<div align="center">(This Copy Is To Remain Attached To The Policy)</div>

---

### LIFE INSURANCE COMPANY OF NORTH AMERICA
### PHILADELPHIA, PENNSYLVANIA

We, Mail-Well Corporation, whose main office address is Englewood, CO, hereby apply to the Life Insurance Company of North America for Policy Number LK-007945.

We approve and accept the terms of this Policy.

This application is to be signed in duplicate. One part is to be attached to the Policy; the other part is to be returned to the Life Insurance Company of North America.

This application supersedes any previous application for this Policy.

<div align="center">

Mail-Well Corporation
(Full or Corporate Name of Applicant)
</div>

Signed at_____    By _____

<div align="right">(Signature and Title)</div>

On_____    Witness _____

<div align="center">(To be signed by Licensed Resident Agent where required by law)</div>

TL-004778

<div align="center">(This Copy Is To Be Returned To Us)</div>

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40034-FDS

THOMAS D. BRENNAN,                    )
                                      )
            Plaintiff,                )
v.                                    )
                                      )
LIFE INSURANCE COMPANY                )
OF NORTH AMERICA,                     )
                                      )
            Defendant.                )

## THOMAS D. BRENNAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO LIFE INSURANCE COMPANY OF NORTH AMERICA

Pursuant to the provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Thomas D. Brennan ("Mr. Brennan") hereby requests from Defendant Life Insurance Company of North America ("LINA") production of the following documents:

## INSTRUCTIONS AND DEFINITIONS

1.    You are requested to produce all documents in your custody, possession and control, including all documents which are in the custody of your servants, attorneys, consultants, accountants, or agents regardless of the location of such documents.

2.    The singular form of a noun or a pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used and vice versa; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

3.     Documents to be produced include the originals of all documents, plus all drafts of any requested document and all copies of any requested document, by whatever means made, which bear any marking or other notation or differ in any other way from the original

4.     As used herein, the terms "Defendant", "you" or "yours" refer to LINA, including but not limited to, its agents, officers, employees, representatives and all other persons acting or purporting to act on its behalf.

5.     As used herein, the term "Plaintiff" refers to the plaintiff in this case, Thomas D. Brennan.

6.     Documents to be produced include the originals of all documents, plus all drafts of any requested document and all copies of any requested document, by whatever means made, which bear any marking or other notation or differ in any other way from the original.

7.     The term "communications" includes, but is not limited to, letters, telegrams, telexes, facsimiles (whether hard copy, stored in a hard drive, or stored electronically on a voice mail system, pager, or electronic mail), electronic mail (whether or not in hard copy), inter or intra-office memoranda or communications, envelopes, computer printouts, and all other written and electronic communications of whatever form, notes and memoranda of meetings or oral communications and sound recordings and transcripts thereof.

8.     As used herein, the word "and" and the word "or" separately shall, unless the context does not permit such a construction, be construed to mean "and/or".

9.     As used herein, the term "documents" includes, but is not limited to, letters, telegrams, telexes, facsimiles (whether hard copy, stored in a hard drive, or stored electronically on a voice mail system, pager, or electronic mail), electronic mail (whether or not in hard copy), inter or intra-office memoranda or communications, envelopes, computer printouts, and all other written

2

and electronic communications of whatever form, including, but not limited to, information stored on disk, hard drive, CD ROM, or backup media (i.e., diskette, cartridge tape, hard drive, or CD ROM), notes and memoranda of meetings or oral communications and sound recordings and transcripts thereof; financial records, bank books and statements, purchase orders, canceled checks, check stubs, invoices, bills, order forms, receipts, debit and credit memoranda, applications, accounts, certificates of condition, books of account (including journals, ledgers and the like) and financial statements; business records, minutes, whether formal or informal, of directors', stockholders', partners' or trustees' meetings, stock transfer records, certificates or articles of incorporation, partnership agreements, trust indentures, charters, bylaws, or other corporate, partnership or trust instruments, and all amendments to any of the foregoing, policy statements, manuals, rules, regulations, and guides; communications, financial records, business records, reports, books, pamphlets, periodicals, newspapers and magazines and other publications and clippings there from, price lists, advertisements, contracts and other agreements and memoranda of understanding, promissory notes, guarantees and other instruments, calendars, diaries, blueprints, papers, notes, memoranda, prints, sketches, indices, tapes, data processing cards, computer printouts, and all other writings, drawings, graphs, charts, photographs, phone-records, other data compilations from which information can be obtained, and any other tangible item upon which information is recorded or appears.

10.    As used herein, the term "concerning" means referring to, describing, evidencing, or constituting.

11.    As used herein, the word "person" includes natural persons, proprietorship, partnerships, firms, corporations, public corporations, municipal corporations, federal, state and local governments, all departments and agencies thereof, any other governments, all departments and

agencies thereof, any other governmental agencies, political subdivisions, groups, associations or organizations, including the parties hereto.

12.    As used herein, the term "Northeastern Envelope" refers to either the Northeastern Envelope Manufacturing Corporation when it existed as an independent entity and/or all of Mail-Well Corporation after it bought Northeastern Envelope Manufacturing Corporation, and their respective officers, directors, employees, counsel, representatives or other person acting on their behalves.

13.    As used herein, the term "disability plan" refers to Group Policy Contract LK-7945, plan number 502, issued to Mail-Well Corporation by LINA.

14.    As used herein, the term "handle" refers to the method by which LINA accepts and manages an insurance claim and/or appeal.

15.    In the event that you object to, or claim a privilege with respect to any Instruction or Request for Production, in whole or in part, you are requested to produce all documents (or portions thereof) requested in that portion of the Request for Production as to which you have no objection or claim of privilege.

16.    To the extent that you contend that any requested document is privileged or is otherwise not subject to discovery, please:

a.    state the type of document;

b.    state the name of each signatory to the document and the capacity in which each signed;

c.    state the date of the document;

d.    state the name of each addresser of the document and the capacity in which each was acting at the time he or she addressed the document;

e.    state the name of each addressee of the document (including all persons to whom copies were sent) and the capacity in which each such addressee was addressed;

     f.      set forth the subject matter of the document; and

     g.     set forth the specific grounds or reasons asserted for withholding the document.

17.    In the event that you are able to provide only some of the documents responsive to a Request for Production within the allotted time, you are requested to produce the documents which can be produced and to state the reason for your asserted inability to provide the remaining documents. Once the remaining responsive documents are obtained, those documents should be produced promptly at a mutually agreeable time.

## REQUESTS

Request No. 1

All disability plan policies in effect from 1 January 1998 through 1 January 2002.

Request No. 2

All written communications by and between Defendant and Plaintiff concerning the allegations set forth in the Plaintiff's Complaint.

Request No. 3

All documents concerning LINA's disability insurance claims process, including but not limited to, the insured's report of a claim, your review of the report, your initiation of the claims process and your handling of the claim through the final stage of the claims process.

Request No. 4

All documents concerning your disability insurance claims appeals process, including the insured's report of an appeal of your decision on a claim, your review of the report, your initiation of the appeals process and your handling of the appeal though the final stage of the appeals process.

Request No. 5

All documents concerning Plaintiff's claim for long-term disability benefits pursuant to the disability plan.

Request No. 6

All documents concerning Plaintiff's claim for short-term disability benefits pursuant to the disability plan.

Request No. 7

All documents concerning Plaintiff's appeal from LINA's denial of long-term disability benefits pursuant to the disability plan.

Request No. 8

All documents concerning Plaintiff's appeal from LINA's denial of short-term disability benefits pursuant to the disability plan.

Request No. 9

All documents by and between LINA and any company, entity or individual from 1 January 1998 to the present, concerning insurance for Plaintiff.

Request No. 10

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's claim for long-term disability benefits pursuant to the disability plan.

Request No. 11

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's appeal from LINA's denial of long-term disability benefits pursuant to the disability plan.

Request No. 12

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's claim for short-term disability benefits pursuant to the disability plan.

Request No. 13

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's appeal of LINA'd denial of short-term disability benefits pursuant to the disability plan.

Request No. 14

All documents concerning each and every insured of LINA from 1 January 1998 to the present that made a disability insurance claim pursuant to any disability policy because of multiple sclerosis.

Request No. 15

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's claim for long-term disability benefits.

Request No. 16

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's claim for short-term disability benefits.

Request No. 17

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's appeal from LINA's denial of long-term disability benefits.

Request No. 18

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's appeal from LINA's denial of short-term disability benefits.

{Client Files\LIT\021859\0100\00619472.DOC;1}

Request No. 19

All documents concerning the factual basis for your First Affirmative Defense that "Plaintiff is not within the class of eligible employees covered by the applicable policy of insurance."

Request No. 20

All documents concerning any medical personnel's review and/or rendering of an opinion concerning Mr. Brennan's disability claim records.

Request No. 21

All documents concerning any medical personnel's review and/or rendering of an opinion concerning Mr. Brennan's medical status.

Request No. 22

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability claim by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 23

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 24

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability claim by all individuals, including but not limited to LINA principals,

agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 25

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 26

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning your policy to obtain medical records during a disability claim and/or appeal process.

Request No. 27

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning impairments in functionality when assessing a disability claim.

Request No. 28

All documents which provided a basis for your determination that Plaintiff is not considered an active, full-time salaried employee under the terms of the disability plan.

Request No. 29

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information is generally distributed.

Request No. 30

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning the disability plan distributed to Northeastern Envelope employees.

Request No. 31

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information was distributed to Northeastern Envelope employees.

Request No. 32

All documents concerning communications with any company, entity, or person concerning Plaintiff's employment status.

Request No. 33

All documents concerning all insureds of LINA from 1 January 1998 to the present that made a disability insurance claim pursuant to any disability plan who were denied benefits because you found that they were not within the class of eligible employees covered by the applicable policy of insurance because you did not consider them active, full-time salaried employees.

Request No. 34

All correspondence concerning customer complaints, criticism and/or feedback received from 1 January 1998 to present relating to the consideration of an insured as an active, full-time salaried employee under the terms of any disability plan.

Request No. 35

All correspondence concerning customer complaints, criticism and/or feedback received from 1 January 1998 to present relating to a disability insurance claim pursuant to any disability plan because of multiple sclerosis.

<div style="margin-left:40%">

Respectfully submitted,
THOMAS D. BRENNAN
By his Attorney,

George A. Balko III, BBO # 548872
BOWDITCH & DEWEY, LLP
311 Main Street, P. O. Box 15155
Worcester, MA  01615-0156
(508) 791-3511

</div>

Dated:  January 9, 2006

I hereby certify ... a true copy of the
above document was served upon the
attorney of record for each party by
mail/hand on  9  day.

# Exhibit C

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

THOMAS D. BRENNAN )
            Plaintiff, )
            )
v. )
            )
LIFE INSURANCE COMPANY )
OF NORTH AMERICA )
            Defendant. )
            )

Civil Action No. 05-40034-FDS

## DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Produced herewith at <u>Exhibits A and B,</u> is Plaintiff's entire Claim File.

1.     All disability plan policies in effect from 1 January 1998 through 1 January 2002.

     **Response**: Defendant objects to Request No. 1 as ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. The only relevant policy is the one in effect upon the date Plaintiff claims to have become disabled. Without waiving the objections stated herein, please see Policy No. LK-007945 ("Plan") at <u>Exhibit A</u>, produced herewith.

2.     All written communications by and between Defendant and Plaintiff concerning the allegations set forth in the Plaintiff's Complaint.

     **Response**:  Please see <u>Exhibit B</u>, produced herewith.

3.     All documents concerning LINA's disability insurance claims process, including but not limited to, the insured's report of a claim, your review of the report, your initiation of the claims process and your handling of the claim through the final stage of the claims process.

     **Response**:  Defendant objects to Request No. 3 as ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 3 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process is limited to cases in which there is a question of interpretation.  <u>Glista v. UNUM Life Ins. Co.</u>, 378 F.3d 113, 123-26 (1st Cir. 2004)

(allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 3 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 3 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 3 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

4.    All documents concerning your disability insurance claims appeals process, including the insured's report of an appeal of your decision on a claim, your review of the report, your initiation of the appeals process and your handling of the appeal through he final stage of the appeals process.

Response: Defendant objects to Request No. 4 as ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's appeals process is irrelevant and Request No. 4 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's appeals process is limited to cases in which there is a question of interpretation. Glista v. UNUM Life Ins. Co., 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 4 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 4 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 4 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

5.    All documents concerning Plaintiff's claim for long-term disability benefits pursuant to the disability plan.

Response: Defendant objects to Request No. 5 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

6.    All documents concerning Plaintiff's claim for short-term disability benefits pursuant to the disability plan.

Response: Defendant objects to Request No. 6 to the extent that it seeks documents

protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

7.    All documents concerning Plaintiff's appeal from LINA's denial of long-term disability benefits pursuant to the disability plan.

**Response:** Defendant objects to Request No. 7 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

8.    All documents concerning Plaintiff's appeal from LINA's denial of short-term disability benefits pursuant to the disability plan.

**Response:** Defendant objects to Request No. 8 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

9.    All documents by and between LINA and any company, entity or individual from 1 January 1998 to the present, concerning insurance for Plaintiff.

**Response:** Defendant objects to Request No. 9 as overly broad, unduly burdensome and ambiguous in its request for documents "concerning insurance for Plaintiff." Defendant further objects to Request No. 9 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

10.    All documents by and between LINA and Northeastern Envelope concerning Plaintiff's claim for long-term disability benefits pursuant to the disability plan.

**Response:** Defendant objects to Request No. 10 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

11.    All documents by and between LINA and Northeastern Envelope concerning Plaintiff's appeal from LINA's denial of long-term disability benefits pursuant to the disability plan.

**Response:** Defendant objects to Request No. 11 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

3

12.     All documents by and between LINA and Northeastern Envelope concerning Plaintiff's
        claim for short-term disability benefits pursuant to the disability plan.

        **Response:** Defendant objects to Request No. 12 to the extent that it seeks documents
        protected by attorney client privilege or documents prepared in anticipation of litigation
        and protected by the work product rule. Without waiving the objections stated herein,
        please see Exhibits A and B, produced herewith.

13.     All documents by and between LINA and Northeastern Envelope concerning Plaintiff's
        appeal of LINA's denial of short-term disability benefits pursuant to the disability plan.

        **Response:** Defendant objects to Request No. 13 to the extent that it seeks documents
        protected by attorney client privilege or documents prepared in anticipation of litigation
        and protected by the work product rule. Without waiving the objections stated herein,
        please see Exhibits A and B, produced herewith.

14.     All documents concerning each and every insured of LINA from 1 January 1998 to the
        present that made a disability insurance claim pursuant to any disability policy because of
        multiple sclerosis.

        **Response:** Defendant objects to Request No. 14 as overly broad, unduly burdensome
        and not reasonably calculated to lead to admissible evidence. This case involves one
        claim; an ERISA claim for benefits. The only issue before this Court is whether or not
        Plaintiff is eligible for benefits under the terms of an ERISA Plan. Furthermore,
        documents pertaining to insureds or claimants other than Plaintiff are both
        undiscoverable and inadmissible in ERISA cases. Liston v. UNUM Corporation Officer
        Severance, 330 F.3d 19 (1st Cir. 2003) (upholding the lower court's denial of plaintiff's
        request to discover information regarding other claimants). As such, information relating
        to insureds or claimants other than the Plaintiff is irrelevant and Request No. 14 is not
        reasonably calculated to lead to the discovery of admissible evidence. Defendant also
        objects to Request No. 14 to the extent that it seeks documents protected by attorney
        client privilege or documents prepared in anticipation of litigation and protected by the
        work product rule. Defendant further objects to Request No. 14 because it seeks
        confidential information regarding other claimants and constitutes an unwarranted
        invasion of their privacy. Without waiving the objections stated herein, please see
        Exhibits A and B, produced herewith.

15.     All documents by and between LINA and any other company, entity or individual with
        respect to Plaintiff's claim for long-term disability benefits.

        **Response:** Defendant objects to Request No. 15 as overly broad, unduly burdensome
        and not reasonably calculated to lead to admissible evidence. Defendant further objects
        to Request No. 15 to the extent that it seeks documents protected by attorney client
        privilege or documents prepared in anticipation of litigation and protected by the work
        product rule. Without waiving the objections stated herein, please see Exhibits A and B,
        produced herewith.

4

16.    All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's claim for short-term disability benefits.

    **Response:**  Defendant objects to Request No. 16 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence.  Defendant further objects to Request No. 16 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule.  Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

17.    All documents by and between LINA and any other company, entity, or individual with respect to Plaintiff's appeal from LINA's denial of long-term disability benefits.

    **Response:**  Defendant objects to Request No. 17 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence.  Defendant further objects to Request No. 17 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation.  Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

18.    All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's appeal from LINA's denial of short-term disability benefits.

    **Response:**  Defendant objects to Request No. 18 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence.  Defendant further objects to Request No. 18 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation.  Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

19.    All documents concerning the factual basis for your First Affirmative Defense that "Plaintiff is not within the class of eligible employees covered by the applicable policy of insurance."

    **Response:**  Defendant objects to Request No. 19 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule.  Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

20.    All documents concerning any medical personnel's review and/or rendering of an opinion concerning Mr. Brennan's disability claim records.

    **Response:**  Defendant objects to Request No. 20 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule.  Without waiving the objections stated herein, Defendant does not have any documents responsive to this Request.

5

21.    All documents concerning any medical personnel's review and/or rendering of an opinion concerning Mr. Brennan's medical status.

**Response**: Defendant objects to Request No. 21 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, Defendant does not have any documents responsive to this Request.

22.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability claim by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any person acting or purporting to act on your behalf.

**Response**: Defendant objects to Request No. 22 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 22 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process is limited to cases in which there is a question of interpretation. Glista v. UNUM Life Ins. Co., 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 22 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 22 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 22 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

23.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

**Response**: Defendant objects to Request No. 23 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 23 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process is limited to cases in which there is a question of interpretation. Glista v. UNUM Life Ins. Co., 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's

6

claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 23 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 23 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 23 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

24.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability claim by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

**Response:** Defendant objects to Request No. 24 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 24 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process is limited to cases in which there is a question of interpretation. <u>Glista v. UNUM Life Ins. Co.</u>, 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 24 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Request No. 24 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 24 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

25.    All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any person acting or purporting to act on your behalf.

**Response:** Defendant objects to Request No. 25 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 25 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process

7

is limited to cases in which there is a question of interpretation. <u>Glista v. UNUM Life Ins. Co.</u>, 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 25 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 25 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 25 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see <u>Exhibits A and B</u>, produced herewith.

26. All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning your policy to obtain medical records during a disability clam and/or appeal process.

**Response:** Defendant objects to Request No. 26 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 26 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process is limited to cases in which there is a question of interpretation. <u>Glista v. UNUM Life Ins. Co.</u>, 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 26 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 26 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 26 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets.

27. All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning impairments in functionality when assessing a disability claim.

**Response:** Defendant objects to Request No. 27 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. As such, information relating to Defendant's claims process is irrelevant and Request No. 27 is not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the discoverability and admissibility of documents pertaining to Defendant's claims process

is limited to cases in which there is a question of interpretation. Glista v. UNUM Life Ins. Co., 378 F.3d 113, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question as to the claims administrator's interpretation of the Plan). As there is no question of interpretation in this case, Request No. 27 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to Request No. 27 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 27 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets.

28. All documents which provided a basis for your determination that Plaintiff is not considered an active, full-time salaried employee under the terms of the disability plan.

   **Response:** Defendant objects to Request No. 28 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see Exhibits A and B, produced herewith.

29. All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information is generally distributed.

   **Response:** Defendant objects to Request No. 29 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. Furthermore, Plaintiff's Complaint contains no allegations regarding the distribution of disability plan information. As such, information relating to the distribution of disability plan information is irrelevant and Request No. 29 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 29 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule.

30. All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning the disability plan distributed to Northeastern Envelope employees.

   **Response:** Defendant objects to Request No. 30 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. Defendant also objects to Request No. 30 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 30 to the extent that it seeks confidential and proprietary documents and documents constituting trade secrets. Without waiving the objections stated herein, please see Exhibits A and B.

31. All manuals, booklets, pamphlets, letters, memoranda, and like documents available at

LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information was distributed to Northeastern Envelope employees.

**Response:** Defendant objects to Request No. 31 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. Furthermore, Plaintiff's Complaint contains no allegations regarding the distribution of disability plan information. As such, information relating to the distribution of disability plan information is irrelevant and Request No. 31 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to Request No. 31 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule.

32.    All documents concerning communications with any company, entity, or person concerning Plaintiff's employment status.

**Response:** Defendant objects to Request No. 32 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Without waiving the objections stated herein, please see <u>Exhibits A, B and C (documents produced by Cenveo in response to subpoena),</u> produced herewith.

33.    All documents concerning all insureds of LINA from 1 January 1998 to the present that made a disability insurance claim pursuant to any disability plan who were denied benefits because you found that they were not within the class of eligible employees covered by the applicable policy of insurance because you did not consider them active, full-time salaried employees.

**Response:** Defendant objects to Request No. 33 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. Furthermore, documents pertaining to insureds or claimants other than Plaintiff are both undiscoverable and inadmissible in ERISA cases. <u>Liston v. UNUM Corporation Officer Severance,</u> 330 F.3d 19 (1st Cir. 2003) (upholding the lower court's denial of plaintiff's request to discover information regarding other claimants). As such, information relating to insureds or claimants other than the Plaintiff is irrelevant and Request No. 33 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 33 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 33 because it seeks confidential information regarding other claimants and constitutes an unwarranted invasion of their privacy.

10

34.   All correspondence concerning customer complaints, criticism and/or feedback received from 1 January 1998 to present relating to the consideration of an insured as an active, full-time salaried employee under the terms of any disability plan.

**Response:** Defendant objects to Request No. 34 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. Furthermore, documents pertaining to customers other than Plaintiff are both undiscoverable and inadmissible in ERISA cases. Liston v. UNUM Corporation Officer Severance, 330 F.3d 19 (1st Cir. 2003) (upholding the lower court's denial of plaintiff's request to discover information regarding other claimants). As such, information relating to customers other than the Plaintiff is irrelevant and Request No. 34 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 34 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 34 because it seeks confidential information regarding other claimants and constitutes an unwarranted invasion of their privacy.

35.   All correspondence concerning customer complaints, criticism and/or feedback received from 1 January 1998 to present relating to a disability insurance claim pursuant to any disability plan because of multiple sclerosis.

**Response:** Defendant objects to Request No. 35 as overly broad, unduly burdensome and not reasonably calculated to lead to admissible evidence. This case involves one claim; an ERISA claim for benefits. The only issue before this Court is whether or not Plaintiff is eligible for benefits under the terms of an ERISA Plan. Furthermore, documents pertaining to customers other than Plaintiff are both undiscoverable and inadmissible in ERISA cases. Liston v. UNUM Corporation Officer Severance, 330 F.3d 19 (1st Cir. 2003) (upholding the lower court's denial of plaintiff's request to discover information regarding other claimants). As such, information relating to customers other than the Plaintiff is irrelevant and Request No. 35 is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to Request No. 35 to the extent that it seeks documents protected by attorney client privilege or documents prepared in anticipation of litigation and protected by the work product rule. Defendant further objects to Request No. 35 because it seeks confidential information regarding other claimants and constitutes an unwarranted invasion of their privacy.

Respectfully Submitted,
The Defendant Life Insurance Company
Of North America
By its Attorneys:

CREVIER & RYAN, LLP.

David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO# 657280
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel: 413-787-2400
Facsimile: 413-781-8235
Email: dcrevier@crevierandryan.com
        kparsons@crevierandryan.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing on all counsel of record, by hand, said service having taken place this 2nd day of March 2006.

# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS D BRENNAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| LIFE INSURANCE COMPANY | ) | 05-40034-FDS |
| OF NORTH AMERICA, | ) | |
| Defendant. | ) | |

## NOTICE OF TAKING DEPOSITION

To:   David B. Crevier, Esquire
      Crevier & Ryan, LLP
      1500 Main Street, Suite 2020
      Springfield, MA 01115-5727

PLEASE TAKE NOTICE that commencing at 10:00 a.m. on Thursday, March 7, 2007, at the offices of David B. Crevier, Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, Massachusetts, Plaintiff by his attorney, will take the deposition by oral examination of Life Insurance Company of North America pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure before a Notary Public in and for the Commonwealth of Massachusetts, or before some other officer authorized by law to administer oaths. The deposition will continue from day to day if needed. You are invited to attend and cross examine.

Life Insurance Company of North America shall designate one or more officers, agents, or other persons who can testify on its behalf with respect to and concerning the topics listed in **Schedule A** attached hereto, and to produce copies of the documents identified in **Schedule B**.

THOMAS D. BRENNAN
By his attorneys,

*George A. Balko III*

George A. Balko III (BBO #548872)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 926-3404

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail/hand on 23 Feb 2007 by
*George Balko*

Date:   February 23, 2007

{Client Files\LIT\021859\0100\PLD\DEPOS\00861374.DOC;1}

## SCHEDULE A

1.  The entire claims procedure at CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America.

2.  The hierarchical structure of any claims processing personnel at and within CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, and any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, from January 1, 1999, through the present.

3.  The relationship between the claims procedure at CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, and any and all regulations promulgated by any agency of the government of the United States for handling or processing claims for benefits subject to ERISA or any laws or regulations related thereto.

4.  The relationship between and among CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America.

5.  The actual claims process by CIGNA Disability Management Solutions, CIGNA Group Insurance, or Life Insurance Company of North America, with respect to Thomas Brennan's claim for disability benefits, including short term and long term benefits. This includes, but is not limited to, each action taken by anyone at CIGNA Disability Management Solutions, CIGNA Group Insurance, or Life Insurance Company of North America, the reasoning and rationale behind each such action, the specific justification for each such action, and the person or persons who made the ultimate decision for each action taken at each step of the claims process.

6.  Each and every document produced in this action by Life Insurance Company of North America in response to Thomas Brennan's requests for production of documents.

7.  The position, training, experience, role, and actions of each and every person who handled in any way any part of Thomas Brennan's claim for disability benefits, including short term and long term benefits, including but not limited to any person whose name appears in any document produced by Life Insurance Company of North America in response to Thomas Brennan's requests for production of documents promulgated in this action.

8.  The rules and requirements for handling claims for disability insurance benefits provided by any policy subject to ERISA, or any law or regulation promulgated in relation thereto.

9.  The working relationship between CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, and Mail-Well (a/k/a Mail-Well I Corporation) with respect to

underwriting any benefit insurance plan for Mail-Well employees, from 1995 through the present.

10.    The working relationship between between CIGNA Disability Management Solutions, CIGNA Group Insurance, Life Insurance Company of North America, or any other entity handling disability insurance claims on policies written by Life Insurance Company of North America, and Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) with respect to processing claims for any insurance benefit for Mail-Well employees, from 1995 through the present.

11.    Any disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present.   This includes but is not limited to the interpretation, and the basis for the interpretation, of any provision within any such policy.

12.    Any changes to any disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present.

13.    How any changes to disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present, were communicated to Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) and to the latter's employees.

14.    Any summary of benefits of any disability insurance plan provided by Life Insurance Company of North America to any employees of Mail-Well (a/k/a Mail-Well I Corporation; now known as CENVEO) from January 1, 1995, through the present, whether or not drafted or otherwise prepared by Life Insurance Company of North America.

## SCHEDULE B

1.    All documents requested in Thomas D. Brennan's First Request for Production of
      Documents to Life Insurance Company of North America, attached hereto as <u>Exhibit
      A</u>, which are not protected by attorney client privilege or the work product rule, and
      which have not previously been produced by Life Insurance Company of North
      America in this action.

2.    Life Insurance Company of North America's claims procedure manual, colloquially
      known as the "Book of Knowledge."

Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40034-FDS

THOMAS D. BRENNAN,      )
              )
      Plaintiff,      )
              )
v.                )
              )
LIFE INSURANCE COMPANY   )
OF NORTH AMERICA,      )
              )
      Defendant.     )

## THOMAS D. BRENNAN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO LIFE INSURANCE COMPANY OF NORTH AMERICA

Pursuant to the provisions of Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Thomas D. Brennan ("Mr. Brennan") hereby requests from Defendant Life Insurance Company of North America ("LINA") production of the following documents:

### INSTRUCTIONS AND DEFINITIONS

1.     You are requested to produce all documents in your custody, possession and control, including all documents which are in the custody of your servants, attorneys, consultants, accountants, or agents regardless of the location of such documents.

2.     The singular form of a noun or a pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun shall be considered to include also within its meaning the feminine form of the pronoun so used and vice versa; and the use of any tense of any verb shall be considered to include also within its meaning all other tenses of the verb so used.

3.    Documents to be produced include the originals of all documents, plus all drafts of any requested document and all copies of any requested document, by whatever means made, which bear any marking or other notation or differ in any other way from the original

4.    As used herein, the terms "Defendant", "you" or "yours" refer to LINA, including but not limited to, its agents, officers, employees, representatives and all other persons acting or purporting to act on its behalf.

5.    As used herein, the term "Plaintiff" refers to the plaintiff in this case, Thomas D. Brennan.

6.    Documents to be produced include the originals of all documents, plus all drafts of any requested document and all copies of any requested document, by whatever means made, which bear any marking or other notation or differ in any other way from the original.

7.    The term "communications" includes, but is not limited to, letters, telegrams, telexes, facsimiles (whether hard copy, stored in a hard drive, or stored electronically on a voice mail system, pager, or electronic mail), electronic mail (whether or not in hard copy), inter or intra-office memoranda or communications, envelopes, computer printouts, and all other written and electronic communications of whatever form, notes and memoranda of meetings or oral communications and sound recordings and transcripts thereof.

8.    As used herein, the word "and" and the word "or" separately shall, unless the context does not permit such a construction, be construed to mean "and/or".

9.    As used herein, the term "documents" includes, but is not limited to, letters, telegrams, telexes, facsimiles (whether hard copy, stored in a hard drive, or stored electronically on a voice mail system, pager, or electronic mail), electronic mail (whether or not in hard copy), inter or intra-office memoranda or communications, envelopes, computer printouts, and all other written

and electronic communications of whatever form, including, but not limited to, information stored on disk, hard drive, CD ROM, or backup media (i.e., diskette, cartridge tape, hard drive, or CD ROM), notes and memoranda of meetings or oral communications and sound recordings and transcripts thereof; financial records, bank books and statements, purchase orders, canceled checks, check stubs, invoices, bills, order forms, receipts, debit and credit memoranda, applications, accounts, certificates of condition, books of account (including journals, ledgers and the like) and financial statements; business records, minutes, whether formal or informal, of directors', stockholders', partners' or trustees' meetings, stock transfer records, certificates or articles of incorporation, partnership agreements, trust indentures, charters, bylaws, or other corporate, partnership or trust instruments, and all amendments to any of the foregoing, policy statements, manuals, rules, regulations, and guides; communications, financial records, business records, reports, books, pamphlets, periodicals, newspapers and magazines and other publications and clippings there from, price lists, advertisements, contracts and other agreements and memoranda of understanding, promissory notes, guarantees and other instruments, calendars, diaries, blueprints, papers, notes, memoranda, prints, sketches, indices, tapes, data processing cards, computer printouts, and all other writings, drawings, graphs, charts, photographs, phone-records, other data compilations from which information can be obtained, and any other tangible item upon which information is recorded or appears.

10.    As used herein, the term "concerning" means referring to, describing, evidencing, or constituting.

11.    As used herein, the word "person" includes natural persons, proprietorship, partnerships, firms, corporations, public corporations, municipal corporations, federal, state and local governments, all departments and agencies thereof, any other governments, all departments and

agencies thereof, any other governmental agencies, political subdivisions, groups, associations or organizations, including the parties hereto.

12.    As used herein, the term "Northeastern Envelope" refers to either the Northeastern Envelope Manufacturing Corporation when it existed as an independent entity and/or all of Mail-Well Corporation after it bought Northeastern Envelope Manufacturing Corporation, and their respective officers, directors, employees, counsel, representatives or other person acting on their behalves.

13.    As used herein, the term "disability plan" refers to Group Policy Contract LK-7945, plan number 502, issued to Mail-Well Corporation by LINA.

14.    As used herein, the term "handle" refers to the method by which LINA accepts and manages an insurance claim and/or appeal.

15.    In the event that you object to, or claim a privilege with respect to any Instruction or Request for Production, in whole or in part, you are requested to produce all documents (or portions thereof) requested in that portion of the Request for Production as to which you have no objection or claim of privilege.

16.    To the extent that you contend that any requested document is privileged or is otherwise not subject to discovery, please:

     a.    state the type of document;

     b.    state the name of each signatory to the document and the capacity in which each signed;

     c.    state the date of the document;

     d.    state the name of each addresser of the document and the capacity in which each was acting at the time he or she addressed the document;

     e.    state the name of each addressee of the document (including all persons to whom copies were sent) and the capacity in which each such addressee was addressed;

     f.     set forth the subject matter of the document; and

     g.     set forth the specific grounds or reasons asserted for withholding the document.

17.    In the event that you are able to provide only some of the documents responsive to a Request for Production within the allotted time, you are requested to produce the documents which can be produced and to state the reason for your asserted inability to provide the remaining documents. Once the remaining responsive documents are obtained, those documents should be produced promptly at a mutually agreeable time.

## REQUESTS

### Request No. 1

All disability plan policies in effect from 1 January 1998 through 1 January 2002.

### Request No. 2

All written communications by and between Defendant and Plaintiff concerning the allegations set forth in the Plaintiff's Complaint.

### Request No. 3

All documents concerning LINA's disability insurance claims process, including but not limited to, the insured's report of a claim, your review of the report, your initiation of the claims process and your handling of the claim through the final stage of the claims process.

### Request No. 4

All documents concerning your disability insurance claims appeals process, including the insured's report of an appeal of your decision on a claim, your review of the report, your initiation of the appeals process and your handling of the appeal though the final stage of the appeals process.

Request No. 5

All documents concerning Plaintiff's claim for long-term disability benefits pursuant to the disability plan.

Request No. 6

All documents concerning Plaintiff's claim for short-term disability benefits pursuant to the disability plan.

Request No. 7

All documents concerning Plaintiff's appeal from LINA's denial of long-term disability benefits pursuant to the disability plan.

Request No. 8

All documents concerning Plaintiff's appeal from LINA's denial of short-term disability benefits pursuant to the disability plan.

Request No. 9

All documents by and between LINA and any company, entity or individual from 1 January 1998 to the present, concerning insurance for Plaintiff.

Request No. 10

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's claim for long-term disability benefits pursuant to the disability plan.

Request No. 11

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's appeal from LINA's denial of long-term disability benefits pursuant to the disability plan.

Request No. 12

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's claim for short-term disability benefits pursuant to the disability plan.

Request No. 13

All documents by and between LINA and Northeastern Envelope concerning Plaintiff's appeal of LINA'd denial of short-term disability benefits pursuant to the disability plan.

Request No. 14

All documents concerning each and every insured of LINA from 1 January 1998 to the present that made a disability insurance claim pursuant to any disability policy because of multiple sclerosis.

Request No. 15

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's claim for long-term disability benefits.

Request No. 16

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's claim for short-term disability benefits.

Request No. 17

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's appeal from LINA's denial of long-term disability benefits.

Request No. 18

All documents by and between LINA and any other company, entity or individual with respect to Plaintiff's appeal from LINA's denial of short-term disability benefits.

Request No. 19

All documents concerning the factual basis for your First Affirmative Defense that "Plaintiff is not within the class of eligible employees covered by the applicable policy of insurance."

Request No. 20

All documents concerning any medical personnel's review and/or rendering of an opinion concerning Mr. Brennan's disability claim records.

Request No. 21

All documents concerning any medical personnel's review and/or rendering of an opinion concerning Mr. Brennan's medical status.

Request No. 22

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability claim by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 23

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's long-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 24

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability claim by all individuals, including but not limited to LINA principals,

{Client Files\LIT\021859\0100\00619472.DOC;1}

agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 25

All documents concerning the review and/or rendering of an opinion as to Mr. Brennan's short-term disability appeal by all individuals, including but not limited to LINA principals, agents, employees, attorneys, representatives, insurers and any persons acting or purporting to act on your behalf.

Request No. 26

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning your policy to obtain medical records during a disability claim and/or appeal process.

Request No. 27

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning impairments in functionality when assessing a disability claim.

Request No. 28

All documents which provided a basis for your determination that Plaintiff is not considered an active, full-time salaried employee under the terms of the disability plan.

Request No. 29

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information is generally distributed.

{Client Files\LIT\021859\0100\00619472.DOC;1}

Request No. 30

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning the disability plan distributed to Northeastern Envelope employees.

Request No. 31

All manuals, booklets, pamphlets, letters, memoranda, and like documents available at LINA and/or provided to its employees from 1 January 1998 through the present concerning methods by which the disability plan information was distributed to Northeastern Envelope employees.

Request No. 32

All documents concerning communications with any company, entity, or person concerning Plaintiff's employment status.

Request No. 33

All documents concerning all insureds of LINA from 1 January 1998 to the present that made a disability insurance claim pursuant to any disability plan who were denied benefits because you found that they were not within the class of eligible employees covered by the applicable policy of insurance because you did not consider them active, full-time salaried employees.

Request No. 34

All correspondence concerning customer complaints, criticism and/or feedback received from 1 January 1998 to present relating to the consideration of an insured as an active, full-time salaried employee under the terms of any disability plan.

Request No. 35

All correspondence concerning customer complaints, criticism and/or feedback received from 1 January 1998 to present relating to a disability insurance claim pursuant to any disability plan because of multiple sclerosis.

Respectfully submitted,
THOMAS D. BRENNAN
By his Attorney,

George A. Balko III, BBO # 548872
BOWDITCH & DEWEY, LLP
311 Main Street, P. O. Box 15155
Worcester, MA  01615-0156
(508) 791-3511

Dated:  January 9, 2006

I hereby certify ... is true copy of the above document was served upon the attorney of record for each party by mail/hand on a day ...

{Client Files\LIT\021859\0100\00619472.DOC;1}

# Exhibit E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS D. BRENNAN )
               Plaintiff, )
                         )
                         )
v.                       )     Civil Action No. 05-40034-FDS
                         )
                         )
LIFE INSURANCE COMPANY   )
OF NORTH AMERICA         )
               Defendant. )
                         )

## AFFIDAVIT OF RICHARD LODI

NOW COMES Richard Lodi, and under oath does hereby state and depose:

1. My name is Richard Lodi. I am employed by Life Insurance Company of North America ("LINA") as a Senior Operations Representative.

2. All averments made herein are based on my personal knowledge.

3. LINA's Claims Manual constitutes LINA's entire claims handling methodology.

4. The information contained in LINA's Claims Manual is kept highly confidential by LINA, is not disclosed to others, and gives LINA a competitive advantage over its competitors.

5. The disclosure of the information contained in these documents would cause significant business harm to LINA, as its competitors would have access to LINA's claim handling procedures and the rationale.

Signed under the pains and penalties of perjury this 6 day of March, 2007.

Richard Lodi

1