

## Bowditch
## &Dewey
ATTORNEYS

Direct telephone: (508) 926-3404
Direct facsimile: (508) 929-3004
Email: gbalko@bowditch.com

14 March 2007

Katherine R. Parsons, Esquire
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA  01115-5727

Re:   *Thomas D. Brennan v. Life Insurance Company of North America*
       *U. S. District Court, Civil Action No. 05-40034-FDS*

Dear Mrs. Parsons:

    I respond to your letter of 8 February 2007 which demanded the two fax documents that we withheld from our document production, asserting attorney-client privilege. This also responds to your Motion filed in court seeking to compel production of these documents.

    Despite the assertion in your Motion that there was a conference to discuss this issue, you are of course aware that there was no such conference. The letter that you sent, dated 8 February 2007 and attached to this letter for benefit Judge Saylor, to whom I am sending a copy of this correspondence, requested that we produce the documents. As you know, at the time of your letter I had just been discharged from a 10-day stay in the hospital and was still at home recuperating from another bout of cellulitis. I was still undergoing intraveneous medication at the time.

    When I returned to work on 15 February, after an unexpected three week absence, I had a large accumulation of work to sift through. I eventually did get to your letter, reviewed the faxes, and decided that we would produce them. I had not had the opportunity to do that before you filed your Motion to Compel.

    I note with some surprise that at the deposition of Deborah Martin held in my office on Friday, 23 February 2007, you did not mention this as a pending matter.

    In addition, in talking to you and Dave Crevier about setting up the deposition of Mark Zoeller in Denver, which took place on Monday, 26 February 2007, neither of you mentioned this issue, as well. Accordingly, there was no "conferring" about this issue.

Katherine R. Parsons, Esquire
14 March 2007
Page 2

      In any event, with this letter I am enclosing the previously withheld documents, which we are producing to you in response to your letter and to your Motion. **By copy of this letter to Judge Saylor, I am informing His Honor that your Motion to Compel Production of these documents is not moot and he need not, if he wishes, take formal action on the Motion.**

      Please let me know if you have any questions about the legibility of the enclosed documents.

                                  Very truly yours,

                                  George A. Balko III

GAB/nsw
Enclosures

cc:    The Honorable F. Dennis Saylor IV (w. Enclosures)

# CREVIER & RYAN, LLP

ATTORNEYS AT LAW

TOWER SQUARE
1500 MAIN STREET, SUITE 2020
SPRINGFIELD, MASSACHUSETTS 01115-5727

TELEPHONE (413) 787-2400

FAX (413) 781-8235

David B. Crevier *
Michael P. Ryan
Katherine R. Parsons ♦

\* Also admitted in NY
♦ Also admitted in RI
◊ Also admitted in CT

February 8, 2007

George A. Balko, III, Esq.
Bowditch & Dewey, LLP.
311 Main Street, P.O. Box 15156
Worcester, MA 01608-0156

Re:   Thomas D. Brennan v. Life Insurance Company of North America
      U.S. District Court Civil Action No. 05-40034-FDS

Dear Attorney Balko:

As you know, in response to Defendant's request for production of documents, Mr. Brennan produced the majority of Attorney Longden's file relating to the sale of NHC Stock to MailWell I Corporation in 1999. Mr. Brennan withheld two documents from production, a July 2, 1998 facsimile from Mr. Brennan to Attorney Longden and an August 24, 1999 facsimile from Mr. Brennan to Attorney Longden, identifying them as protected by the attorney-client privilege. The documents Mr. Brennan did produce included notes of telephone conversations between Mr. Brennan and Mr. Longden, as well as other correspondence between Mr. Brennan and Mr. Longden. As explained below, the production of these documents constitutes a waiver of the attorney-client privilege and the July 2, 1998 and August 24, 1999 facsimiles must be produced.

The First Circuit has explained that the waiver of the attorney-client privilege – whether intentional or inadvertent – "will be deemed to encompass all other communications on the same subject." Texaco Puerto Rico, Inc., et al. v. Department of Consumer Affairs, et al., 60 F.3d 867, 883-84 (1st Cir. 1995); In Re Lernout & Hauspie Securities Litigation, 222 F.R.D. 29, 34-35 (D.Mass. 2004)(relying on Texaco to conclude that if an inadvertent waiver constitutes a waiver of all other communications on the same subject, then an intentional waiver has the same result). In this case, the July 2, 1998 and August 24, 1999 facsimiles clearly have to do with the sale of NHC stock to MailWell, the same subject of the disclosed documents. Consequently, Mr. Brennan has waived the attorney-client privilege with respect to the July 2, 1998 and August 24, 1999 facsimiles and they must be produced.

Please produce these documents by February 16, 2007. Thank you.

Very truly yours,

Kate Parsons

Katherine R. Parsons

AUG. -24' 99 (TUE) 10:33   NORTHEASTERN ENVELOP   TEL:1 781 843 4743   P.001



# NORTHEASTERN ENVELOPE MFG. CORP.
1515 WASHINGTON STREET • BRAINTREE, MASSACHUSETTS 02184

PHONE: (781) 843-4900
FAX: (781) 843-4743

## FAX COVER SHEET

TO:
NAME: BoB Longden    COMPANY: B & D

Date: _____   Time: _____   A.M. P.M.   Number of pages (Including Cover Letter): _____

Note: If you did not receive all of the pages or if you have a question, please call phone number (above).   508 756-7636

FROM:
NAME: Tom Brennan

SUBJECT:

REMARKS:
BoB —
Comments on attached proposed memo to Mahoney?
Thanks.

Tom   sent by Ken

MANUFACTURERS OF COMMERCIAL ENVELOPES

~~DRAFT~~

TO MAHONEY
DEAR JERRY;

I RECEIVED A VOICE MAIL MESSAGE FROM BRUCE THOMPSON
LATE LAST WEEK REGARDING MAILWELL'S POSITION THAT
IT NEVER INTENDED TO AGREE TO OUR PROPOSED SELLER
FINANCING IN THE SALE OF THE STOCK OF NHC CORP
TO MAILWELL.

HIS MESSAGE, WHICH INDICATED THAT YOU HAD RECEIVED MY
MEMO OF MARCH 8,1999, LEAVES ME WITH THE CONCLUSION THAT
WE HAVE NEVER HAD A MEETING OF THE MINDS ON THIS DEAL.

WE OFFERED SECURED SELLER FIINANCING. YOU REJECTED THE
SECURED ASPECT OF THE DEAL--BUT NEVER TOLD US THAT.

SINCE WE WERE ALLOWED TO BELIEVE THAT YOU HAD ACCEPTED
THE TERMS OUTLINED IN MY MEMO, WE AGREED TO
A GREAT MANY CONCESSIONS TO YOU ON SUCH
THINGS AS REPRESENTATIONS, WARRANTIES, EMPLOYMENT
TERMS, ETC., WHILE MY SIDE WAS MISINFORMED ON
WHAT THE ACTUAL MONETARY TERMS WERE.


I HAVE TOLD MY ATTORNEY TO STOP WORK.

IF WE CAN WORK SOMETHING OUT, FINE. IF NOT, FINE.

THERE IS NO SELLER FINANCING AVAILABLE ON AN UNSECURED
BASIS.


I HAVE INCLUDED OUR MOST RECENT FINANCIALS, TO MAKE SURE
YOU ARE UP TO DATE.

MY SUGGESTION IS THAT YOU PAY CASH AND BE DONE WITH
IT. SAME PRICE--CASH OR SECURED CREDIT.

LET ME KNOW HOW YOU WANT TO PROCEED.

REGARDS,
TB