UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40034-FDS

THOMAS D. BRENNAN,                              )
                                                )
                    Plaintiff,                  )
                                                )
v.                                              )
                                                )
LIFE INSURANCE COMPANY                          )
OF NORTH AMERICA,                               )
                                                )
                    Defendant.                  )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
## PROTECTIVE ORDER CONCERNING 30(b)(6) DEPOSITION NOTICE
## OF LIFE INSURANCE COMPANY OF NORTH AMERICA

Plaintiff hereby opposes Defendant's Motion for Protective Order concerning the

scope of topics to be questioned and documents to be produced contained in Schedule A

and Schedule B respectively of Plaintiff's Rule 30 (b)(6) Deposition Notice to Defendant

Life Insurance Company of North America ("LINA"). LINA's Motion for Protective

Order seeks to limit Plaintiff's deposition of Defendant to merely having Defendant's

designee identify documents in Plaintiff's claim file and the facts learned by Defendant in

the claims process concerning Plaintiff's eligibility for an entitlement to benefits under the

terms of the disability insurance plan in question. See Plaintiff's Motion for Protective

Order, Page 4. Such a limitation would eviscerate any meaningful questioning by Plaintiff

in this deposition. In essence, Defendant seeks to limit the deposition to the designee

identifying documents and stating the facts which Defendant recited in its ultimate denial

letter on Plaintiff's claim for long term disability benefits. Such restrictions would make a

mockery of the process, unfairly prejudice Plaintiff in the trial of this case, and

unreasonably restrict Plaintiff's preparation for impeaching Defendant's anticipated testimony and evidence at trial. Accordingly, Defendant's Motion should be denied.

## SUMMARY OF THE CLAIM

Plaintiff Thomas Brennan became disabled from his work for Mail-Well Corporation's division, known as Northeastern Envelope Manufacturing Company, on 29 May 2001. Brennan was the Vice President of the Division, which had operated as an independent company until Mail-Well purchased it in October of 1999. After that time, the former owners of Northeastern Envelope Manufacturing Company, Gerald Mitchell and Thomas Brennan, continued in their employment as President and Vice President of the Division, respectively, essentially continuing their prior work but for the new ownership.

In 2000, Brennan was diagnosed with multiple sclerosis. The symptoms continued to worsen through 2000 and into 2001. By May of 2001, the symptoms, both physical and mental, were severely affecting his ability to continue his work in an effective and safe way. Mitchell, as President of the Division and the person responsible for the safety of all employees and the operation of business, discussed with Brennan his increasing difficulties in carrying out his tasks in an acceptable manner. With the support of Brennan's physician, Naren Sodha, M.D., Brennan decided with Mitchell that Brennan should stop work because of his disability on 29 May 2001. Over the next several months, Brennan negotiated with Mail-Well a severance package which was ultimately concluded in August 2001. The severance package contained a provision whereby Mail-Well and Brennan agreed that his employment terminated on 30 May 2001. Thus, Brennan left work because of his disability while still an employee of Mail-Well Corporation.

2

Mail-Well Corporation had an insurance plan for disability benefits ("the Plan") issued by Defendant which covered "all active, full-time union-free hourly and Salaried Employees of the Employer and affiliated companies working the regularly scheduled full-time hours, but not less than thirty-five hours per week." See Disability Insurance Plan, Exhibit A to Defendant's Motion, Page 3. Eligible employees are entitled to benefits if they are disabled under the terms of the plan. Eligible employees are considered if:

Solely because of Injury or Sickness, he or she is either:

1. unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or

2. unable to earn 80% or more of his or her Indexed Covered Earnings.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

1. unable to perform all the material duties for any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or

2. unable to earn 80% or more of his or her Indexed Covered Earnings.

Plan at 4.

Because of the severance package Plaintiff negotiated with Mail-Well, he initially filed in 2001 a claim for long term Disability Benefits with Defendant LINA. LINA, a member of the CIGNA Group of Insurance Companies, had his claim handled by a CIGNA claims handling office in Dallas, Texas. CIGNA, on behalf of LINA, forced Brennan to initially apply for Short-Term Disability Benefits, which he did not want. Nevertheless, he proceeded with that application process under protest. He was eventually denied Short-Term Disability Benefits on the grounds that he had not proved that he was disabled. There was no mention at any time in the Short-Term Disability application process that Brennan was not eligible for benefits because of his employment status.

3

After exhausting the appropriate appeals on the Short-Term Disability Claim, Brennan proceeded to file a Long-Term Disability claim with LINA for the same disability. Brennan filed a claim on or about 20 September 2001. Complaint Paragraph 10. LINA did not deny Plaintiff's claim until sending a denial letter dated 23 April 2004, some two and a half years later. Complaint, Paragraph 13. Brennan appealed LINA's denial in October 2004. Complaint, Paragraph 14. LINA did not make a determination with respect to Brennan's appeal in the time prescribed by law, and Brennan thereafter filed this lawsuit. Complaint Paragraph 16.

Of interest is the basis for the denial of the Long-Term Disability claim. No mention was made of any denial based on any medical grounds. Rather, LINA denied the Long-Term Disability Benefit claim on the grounds that Brennan was not entitled to benefits since he did not meet the eligibility requirements pertaining to his employment status.

## ARGUMENT

LINA's Motion for a Protective Order essentially seeks to restrict Brennan's deposition of LINA to having LINA's designee identify documents in Brennan's claim file and reiterate the facts that LINA asserts supports its denial of his claim, which facts were contained in the 23 April 2004 denial letter. As such, the deposition would be entirely useless. This result should not be allowed.

Moreover, LINA's Motion should be denied because there are lines of inquiry contained within the topics identified, and in documents requested, that are reasonably calculated to lead to the discovery of admissible evidence, or are reasonably calculated to enable Brennan to impeach anticipated testimony or evidence that LINA may present at trial. Brennan should not be constrained to seek to discover information that LINA

4

believes is relevant; he should be allowed reasonable latitude not only to discover what LINA's description of facts of the claim was, but also its thought process in evaluating those facts.[1]

CIGNA's claim handling office, on behalf of LINA (hereafter collectively referred to as "LINA" or "Defendant") made two full reviews of Brennan's application for disability benefits. The information provided in both claims was essentially identical, yet LINA came to two completely different end results after its claims analysis. Brennan should be entitled to discover why, on essentially the same facts documented, LINA made such a different analysis of his claim.

Secondly, in the long term disability claim process, LINA denied Brennan's claim on the basis that he was not working at least 35 hours per week at the time of his disability at Mail-Well's location or at a location required of him by the employer.

In so doing, Brennan has contended during the course of this litigation, and during the claims process, that Defendant unreasonably and intentionally has ignored superior documentation and evidence, and had purposely refused to obtain superior information, that would have supported Brennan's claim for benefits. Instead, LINA has essentially relied on two things; terms of an employment agreement entered into between Mail-Well and Brennan when Northeastern Envelope was sold to Mail-Well in 1999, and on what it supposedly was told by another employee of Mail-Well, that being that Brennan only worked two days per week. That testimony has since been repudiated by the source, Deborah Martin, the former Comptroller of Northeastern Envelope Manufacturing Company, at a deposition. At the same time, LINA ignored Brennan's affirmation that he

---

[1] Plaintiff has agreed he is not entitled to, nor does he seek, documents or information about LINA/CIGNA's handling of other similar long term disability claims.

5

did work 40 or more hours per week. LINA also ignored a letter, and subsequently an affidavit under oath, from Gerald Mitchell that Brennan did work a full-time schedule. In addition, Mitchell has testified to that fact at his deposition, again under oath.

## I.  Plaintiff Should Be Allowed to Question Defendant About Its Claims Procedure on This Claim to Investigate Inconsistencies in Its Analysis and Failure to Fully Investigate the Claim.

Brennan should be allowed to inquire of Defendant's designee about its claims process on this claim, as compared to Defendant's standard claims procedure. The inconsistency between the analyses of the short term disability and the long term disability claims are troublesome. Discovering the reason for the inconsistency would be relevant to evidence to be introduced at trial. It could lead to information that would allow Brennan to attack the credibility of Defendant's trial testimony that the asserted grounds for the denial of the long term disability claim are accurate, comprehensive, and sufficient. Plaintiff contends that Defendant purposely ignored information in investigating the claim and is ignoring information reiterated during discovery of this case. If it is not ignoring that information, Defendant is arguably unreasonably discounting the information.

Plaintiff should be able to discover what evidence Defendant might introduce by testimony at trial on these points in order to adequately prepare to rebut or impeach Defendant's anticipated evidence. The only way this could be done is to learn what is Defendant's standard claims investigation protocol, learn what was actually done in this case, and learn why Defendant relied on the facts that it did in denying Brennan's claim, while ignoring or discounting other facts. If successful, Brennan would be able to obtain information that would allow it to significantly undermine the weight of Defendant's

6

anticipated trial testimony in defending its interpretation of the facts relative to Brennan's entitlement to the benefits under the Plan.

## II.    Plaintiff Should be Entitled to Inquire About Topics Related to the Relationship between LINA and Mail-Well Corporation with Respect to the Drafting, Dissemination, and Explanation of the Subject Plan.

Defendant's defense to Brennan's claim is focused entirely on its interpretation of certain provisions in the Plan. Accordingly, Brennan should be allowed to explore the genesis and history of that interpretation.

Brennan should be allowed to inquire about Defendant's working history of underwriting and drafting disability benefit plans for Mail-Well. Brennan should also be entitled to inquire about the dissemination of those plans, and training and education about the contents of those plans. This may lead to information concerning how the provisions upon which Defendant now relies were drafted, conceived, or explained to Mail-Well employees, including contemporaries of Brennan at Northeastern Envelope Manufacturing Company. In addition, if there is a historical difference of opinion as to the meaning of these provisions between LINA's underwriting division and its claims handling agent (i.e., CIGNA Disability Management Solutions), Brennan should be able to determine that there is such a disparity. Such a disparity would allow Brennan to prepare rebuttal questioning or impeachment testimony as to Defendant's present position on the meaning of the provisions of its own policy. In addition, it would be relevant if in the past Defendant had explained the meaning of the provisions of the policy differently to Mail-Well corporate representatives or to its employees through training or information-dissemination sessions.

This represents a reasonable line of inquiry that may lead to admissible evidence or it may lead to information that could allow Brennan to impeach or rebut Defendant's

7

anticipated trial evidence. This line of inquiry includes questions about creation and disseminations of plan summaries, which may have been distributed to Mail-Well employees and which may have a bearing on what was the contemporaneous interpretation of relevant Plan provisions, as well as what might have been the reasonable expectation of insureds under the Plan or its predecessors. This line of questioning should be allowed.

## III.    The Documents Requested Should be Produced as They Bear Directly on the Reasonable Line of Inquiry in the Deposition Notice.

Brennan asked for two sets of documents in its deposition notice. First, he asked for all documents not produced in response to his first request for production of documents which were not protected by attorney-client privilege, the work product doctrine, or which were previously produced. Secondly, he asked for production of Defendant's claims and procedure manual, colloquially known as the "Book of Knowledge." Both sets of documents should be produced.

In responding to Plantiff's First Request for Production of Documents, Defendant objected to most of the production on the grounds that the requests were not reasonably calculated to lead to admissible evidence and not relevant. Defendant further objected on the grounds that "documents pertaining to Defendant's claims process is limited to cases in which there is a questions on interpretation. Glista v. UNUM Life Ins. Co., 378 F. 3rd 133, 123-26 (1st Cir. 2004) (allowing Plaintiff to admit Defendant's claims procedures where there was a question after the claims administrator's interpretation of the Plan)." See Exhibit C to Defendant's Motion for Protective Order, at numerous responses.

These objections are not valid. The objections as to relevancy and a reasonable likelihood to lead to admissible evidence has been rebutted in the arguments above. It would be grossly unfair not to allow Brennan a reasonable opportunity to ascertain

8

Defendant's thought process in reaching its conclusion as a meaningful and reasonable avenue to prepare rebuttal evidence or impeachment testimony. As to the objection based on Glista, this objection is completely without merit. At issue is clearly an interpretation of the terms of the plan. Defendant claims that Brennan was not working as a "full-time" employee and was not working at a location "required by the employer" and was not medically disabled *as defined by the Plan*. Brennan argues the opposite. The central issues of the case revolve around conflicting interpretations of these terms of the Plan. Glista allows claims procedures to be explored, and introduced as evidence, where claims term interpretation is at issue. Id. This is such a case. Defendant's objection to the request for production of documents is without merit, and its repeated objection to the Plaintiff's repeating the request in Schedule B of it deposition notice is similarly inappropriate.

Defendant, finally, objects to the production of its claims procedure manual on the grounds that the claims process is irrelevant and on the grounds that the claims procedure manual contains proprietary information. The relevancy of the claims procedure, as an avenue of determining the adequacy or appropriateness of Defendant's final position, and the weight of anticipated evidence in proffering that information, is clearly relevant. Furthermore, the Plan is an ERISA plan, and as such LINA's claims process is heavily controlled by Department of Labor regulations. See generally 29C.F.R. Chapter XXV. Much of the claims handling procedure contained in Defendant's manual must incorporate these publicly promulgated and disseminated regulations, and as such they cannot constitute trade secrets.

9

To the extent that there are any trade secrets contained in the claims procedure manual, Defendant's assertion that it should not be produced for this reason is overreaching. If there are components that constitute trade secrets, in a situation where the manual is relevant to determine the thoroughness or reasonableness of Defendant's asserted factual findings, the appropriate protection would be to issue a confidentiality order, not to prevent production at all. The asserted need to keep the claims procedure manual confidential to maintain a "competitive advantage over its competitors" (Affidavit of Richard Lodi attached as Exhibit E to Defendant's Motion, at ¶3) would not be impinged by disclosing the manual to Plaintiff, a disabled individual not in the business of insurance, or his counsel, if its use is restricted to this case. As Federal Rule of Civil Procedure 26(c)(7) specifically states, a court is authorized to issue a protective order "that a trade secret or other confidential research, development, or commercial information not be revealed *or be revealed only in a designated way*." Defendant suffers no loss if its claims manual is produced in response to this deposition under a confidentiality order; Brennan may suffer serious harm to his ability to fully and fairly try this case if the manual is not produced. Brennan should be allowed to inquire whether the conclusion Defendant reached in this case was appropriately obtained, based on its own standard of behavior, and that they should be discounted by the Court.

## CONCLUSION

For the above reasons, Defendant's Motion for Protective Order should be denied. However, Brennan would agree that its production of the claims handling manual be subject to a reasonable confidentiality order that protects any alleged trade secrets.

10

Brennan should be allowed to explore, and to be able to present at trial, evidence that

Defendant's proffered interpretation of the relevant facts of the Plan and

Brennan's claim should not be given the weight Defendant seeks, in order to give

Brennan a fair opportunity to litigate this case at trial.

> Respectfully submitted,
> THOMAS D. BRENNAN
> By his Attorney,
>
> /S/ George A. Balko III
> George A. Balko III, Esquire, BBO # 548872
> BOWDITCH & DEWEY, LLP
> 311 Main Street, P.O. Box 15156
> Worcester, MA 01615-0156
> (508) 791-3511
> gbalko@bowditch.com

Dated: March 22, 2006

## Certificate of Service

I, George A. Balko III, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on 22 March 2007.

> /S/ George A. Balko III
> George A. Balko III, Esquire

11