UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS D. BRENNAN )<br>Plaintiff, )<br>)<br>v. )<br>)<br>LIFE INSURANCE COMPANY )<br>OF NORTH AMERICA )<br>Defendant. ) | Civil Action No. 05-40034-FDS |

**LIFE INSURANCE COMPANY OF NORTH AMERICA'S
POST-TRIAL MEMORANDUM**

Defendant, Life Insurance Company of North America ("LINA") hereby files this Post-trial Memorandum in conjunction with LINA's Post-trial Proposed Findings of Fact and Conclusions of Law.

As fully explained in LINA's Post-trial Proposed Findings of Fact and Conclusions of Law, there are two issues before the Court in this case: 1) whether Plaintiff was working a regularly scheduled workweek of at least 35 hours per week ("35 Hour Per Week Issue"), Post-Trial Proposed Findings of Fact at ¶ 86-90; Post-Trial Proposed Conclusions of Law at ¶ 5; and 2) whether Plaintiff's long-term disability insurance coverage terminated prior to his last day of work on May 29, 2001 ("Coverage Termination Issue"), Post-Trial Proposed Findings of Fact at ¶ 91-100; Post-Trial Proposed Conclusions of Law at ¶ 6.

During the trial, Plaintiff's counsel objected to the introduction of some of the evidence and argument regarding the Coverage Termination Issue. Trial Day Two at 83:1-4; Trial Day One at 70:7-18. Plaintiff's counsel incorrectly paraphrased a portion of LINA's counsel's opening statement claiming that counsel for LINA said that "the only issue in this case was whether [Plaintiff] worked 35 hours a week or not." Trial Day Two at 83:1-4. The Court

1

suggested that such a statement could constitute a judicial admission, but allowed the evidence and argument, stating that it would consider the issue later.  <u>Trial Day Two</u> at 83:9-12; <u>Trial Day Three</u> at 70:25-71:3.  LINA submits this Post-Trial Memorandum to explain that: 1) LINA's pretrial filings and conduct during trial clearly identified the Coverage Termination Issue; and 2) the statement by LINA's counsel does not constitute a judicial admission.

## FACTS

1. Over two weeks before the start of trial, LINA submitted Proposed Findings of Fact and Conclusions of Law.  <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40).

2. Approximately one-week before the start of trial the Parties filed a Stipulation Regarding the Issue to Be Tried In This Case and specifically waived the issue of disability.  <u>Stipulation</u> (Document No. 42).

3. LINA's Proposed Findings of Fact and Conclusions of Law clearly identified the 35 Hour Per Week Issue, stating:

   > Thomas Brennan was not eligible to receive benefits under the Plan because he was not working 35 hours or more per week and, as such, was not a member of the Classes of Eligible Employees under the terms of the Plan.  Consequently, Thomas Brennan was never a participant in the Plan and cannot maintain an ERISA claim for benefits under the Plan.

   <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 10 ¶ 5.

4. LINA's Proposed Findings of Fact and Conclusions of Law also clearly identified the Coverage Termination Issue, stating:

   > Even if Thomas Brennan was a member of the Classes of Eligible Employees, which he was not, his coverage would have terminated under the termination provisions in the Plan because he was: 1) no longer an eligible employee and/or 2) no longer in Active Service.  Consequently, Thomas Brennan was not a participant in the Plan and cannot maintain an ERISA claim for benefits under the Plan.

2

<u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 10 ¶ 6.

5. LINA's Proposed Findings of Fact and Conclusions of Law further explained that:

> Coverage for members of the Classes of Eligible Employees terminates under the terms of the Policy in certain circumstances, including the following: 1) the date the Employee is no longer in an eligible class; or 2) the date the Employee is no longer in Active Service. <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 8 ¶ 54.
>
> Under the terms of the Policy:
> > An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.
> > 1. He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or some location to which the Employer's business requires the Employee to travel.
> > 2. The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.
>
> <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 8 ¶ 55.
>
> Thomas Brennan admits that he only worked at Mail-Well's Braintree Plant two days per week. <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 8 ¶ 56.
>
> Thomas Brennan alleges that he worked at home the remaining days of the week, however, Mr. Brennan's home was not one of [Mail-Well's] "usual places of business" nor was it "some location to which [Mail-Well's] business required [Mr. Brennan] to travel." <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 8 ¶ 57.
>
> Consequently, even if Thomas Brennan was at some point in time a member of the Classes of Eligible Employees, which he was not, his coverage terminated on or prior to May 29, 2001 because: 1) he was no longer in an eligible class, and/or 2) he was no longer in Active Service. <u>Proposed Findings of Fact and Conclusions of Law</u> (Document No. 40) at page 8 ¶ 58.

6. Consistent with LINA's Proposed Findings of Fact and Conclusions of Law, during his opening statement, LINA's counsel indicated that the case would primarily involve the 35

Hour Per Week Issue, stating, "[t]his case will primarily involve the simple issue of whether or not Mr. Brennan was working a regularly scheduled workweek of at least 35 hours a week from Mail-Well. That's the issue in this case." <u>Trial Day One</u> at 11:11-14.

7. Plaintiff's counsel was well aware of the Coverage Termination Issue because, despite later objections and arguments that LINA had waived the Coverage Termination Issue, Plaintiff's counsel entered evidence relating to the Coverage Termination Issue. For example, he had Plaintiff testify in depth about what Plaintiff did when he worked from home, what his set up was, whether he was connected to the Mail-Well system and whether he was authorized by Gerald Mitchell to work at home. <u>Trial Day One</u> at 59:3-62:4; 103:16-104:16. Similarly, Plaintiff's counsel had Gerald Mitchell testify about whether he approved Plaintiff's working from home. <u>Trial Day Two</u> at 40:16-41:11.

8. Likewise, prior to Plaintiff's counsel's objections, counsel for LINA elicited evidence clearly related to the Coverage Termination Issue. For example, LINA's counsel asked Plaintiff whether he ever sought reimbursement for expenses associated with the use of his home and whether he had a business card indicating his home was a place of employment <u>Trial Day One</u> at 142:16-25.

9. At the very end of Day Two of the trial, despite introducing evidence relating to the Coverage Termination Issue and despite not initially objecting to LINA's counsel's introduction of evidence relating to the Coverage Termination Issue, Plaintiff's counsel objected to a question by LINA's counsel asking Mr. Mitchell whether Mr. Brennan's home was a usual place of business for Mail-Well or Northeastern Envelope. <u>Trial Day Two</u> at 82:21-83:4.

4

10. Plaintiff's counsel incorrectly paraphrased the statement by LINA's counsel that "[t]his case will primarily involve the simple issue of whether or not Mr. Brennan was working a regularly scheduled workweek of at least 35 hours a week from Mail-Well.  That's the issue in this case," claiming that counsel for LINA said that "the only issue in this case was whether [Plaintiff] worked 35 hours a week or not." Trial Day Two at 83:1-4.

11. The Court suggested that the statement, as incorrectly paraphrased by Plaintiff's counsel, could constitute a judicial admission, but allowed the evidence and argument, stating that it would consider the issue later.  Trial Day Two at 83:9-12; Trial Day Three at 70:25-71:3.

## ARGUMENT

As explained below: 1) LINA's pre-trial filings and conduct during the trial clearly identified the Coverage Termination Issue as an issue in this case; and 2) LINA's counsel's statement does not constitute a judicial admission because it was not a deliberate voluntary waiver conceding the truth of an alleged fact.

**1.    LINA CLEARLY IDENTIFIED THE COVERAGE TERMINATION ISSUE AS AN ISSUE IN THIS CASE**

LINA's pre-trial filings, as well as its conduct during trial, clearly identified the Coverage Termination Issue as an issue in this case.  As described above in the Facts section, the Proposed Findings of Fact and Conclusions of Law submitted by LINA over two weeks before trial commenced, explicitly identified both the 35 Hour Per Week Issue and the Coverage Termination Issue.  Facts at ¶ 3-5.[1]  Consistent with the Proposed Findings of Fact and Conclusions of Law, during his opening statement, LINA's counsel identified the 35 Hour Per Week Issue as the primary issue in this case stating, "[t]his case will **primarily** involve the

---

[1] For ease of reference, citations to "Facts" contained in this memorandum refer to the "Facts" section at pages 2-5 of this Memorandum.

simple issue of whether or not Mr. Brennan was working a regularly scheduled work week of at least 35 hours a week from Mail-Well. That's the issue in this case." Facts at ¶ 6. Contrary to Plaintiff's counsel later incorrect paraphrasing of this statement, LINA's counsel did not identify the 35 Hour Per Week Issue as the **only** issue in this case, but rather, LINA's counsel identified it as the issue **primarily** involved in this case. Facts at ¶ 9.

Moreover, Plaintiff's counsel was well aware of the Coverage Termination Issue because, despite later objections and arguments that LINA had waived the Coverage Termination Issue, Plaintiff's counsel entered evidence relating to the Coverage Termination Issue. Facts at ¶ 7. For example, he had Plaintiff testify in depth about what Plaintiff did when he worked from home, what his set up was, whether he was connected to the Mail-Well system and whether he was authorized by Gerald Mitchell to work at home. Facts at ¶ 7. Similarly, Plaintiff's counsel had Gerald Mitchell testify about whether he approved Plaintiff's working from home. Facts at ¶ 7. Likewise, prior to Plaintiff's counsel's later protestations, counsel for LINA elicited evidence clearly related to the Coverage Termination Issue. Facts at ¶ 8. For example, LINA's counsel asked Plaintiff whether he ever sought reimbursement for expenses associate with the use of his home and whether he had a business card indicating his home was a place of employment for Mail-Well or Northeastern Envelope. Facts at ¶ 8.

As explained above: 1) LINA's pre-trial filings and LINA's counsel's conduct clearly identified the Coverage Termination Issue as an issue in this case; and 2) despite later claims that LINA had waived the Coverage Termination Issue, Plaintiff's counsel introduced evidence relevant to the Coverage Termination Issue.

2.  **LINA'S COUNSEL'S STATEMENT DOES NOT CONSTITUTE A JUDICIAL ADMISSION**

As described above, Plaintiff's counsel incorrectly paraphrased the statement by LINA's counsel that "[t]his case will primarily involve the simple issue of whether or not Mr. Brennan was working a regularly scheduled workweek of at least 35 hours a week from Mail-Well. That's the issue in this case," claiming that counsel for LINA said that "the only issue in this case was whether [Plaintiff] worked 35 hours a week or not." Facts at ¶ 10. The Court suggested that the statement, as incorrectly paraphrased by Plaintiff's counsel, could constitute a judicial admission, but allowed the evidence and argument, stating that it would consider the issue later. Facts at ¶ 11. The First Circuit has instructed that, "judicial admissions generally **arise only from deliberate voluntary waivers that concede** for the purposes of trial **the truth of an alleged fact**." U.S. v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975). The statement by LINA's counsel is not a judicial admission because, as explained below, LINA's counsel's statement: 1) was not a "deliberate voluntary waiver"; and 2) did not "concede . . . the truth of an alleged fact."

First, counsel for LINA stated, "[t]his case will primarily involve the simple issue of whether or not Mr. Brennan was working a regularly scheduled workweek of at least 35 hours a week from Mail-Well. That's the issue in this case." This cannot be construed to be a deliberate waiver of anything. In addition, for the same reasons identified above in Section 1, LINA's pretrial filings, LINA's counsel's conduct during trial and Plaintiff's counsel's conduct during trial clearly demonstrated that LINA did not waive the Coverage Termination Issue. Moreover, if LINA had intended to voluntarily and deliberately waive the Coverage Termination Issue, it would have entered into a stipulation with Plaintiff as the Parties did with respect to the issue of disability. Facts at ¶ 2.

7

Second, the statement that "this case will primarily involve the simple issue of whether Mr. Brennan was working a regularly scheduled work week of at least 35 hours a week from Mail-Well" does not "concede . . . the truth of an alleged fact." This statement does not involve any facts at all; rather, it is simply a statement that identifies one of LINA's legal theories.

Consequently, the statement by LINA's counsel does not constitute a judicial admission and the Court must consider the issue of whether Mr. Brennan's coverage terminated prior to the time he left work on May 29, 2001, as well as the issue of whether Mr. Brennan was working at least 35 hours per week.

## CONCLUSION

As explained above: 1) LINA's pretrial filings and the conduct of counsel for the Parties all clearly identify the Coverage Termination Issue as an issue in this case; and 2) the statement by counsel for LINA does not constitute a judicial admission. Consequently, the Court must consider the Coverage Termination Issue, as well as the issue of whether Mr. Brennan was working a regularly scheduled workweek of at least 35 hours a week for Mail-Well.

Respectfully Submitted,

Defendant, Life Insurance Company of North America,

By its Attorneys:

CREVIER & RYAN, LLP.

/s/Katherine R. Parsons
David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO # 657280
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel: 413-787-2400
Facsimile: 413-781-8235
Email: dcrevier@crevierandryan.com
         kparsons@crevierandryan.com

8

**CERTIFICATE OF SERVICE**

     I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 21st day of December, 2007.

                                                /s/Katherine R. Parsons