Case 4:05-cv-40034-FDS   Document 63   Filed 03/06/2008   Page 1 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
THOMAS D. BRENNAN                   )
           Plaintiff,               )
v.                                  )   Civil Action No. 05-40034-FDS
                                    )
LIFE INSURANCE COMPANY              )
OF NORTH AMERICA                    )
           Defendant.               )
_____)

### DEFENDANT LIFE INSURANCE COMPANY OF NORTH AMERICA'S ASSENTED TO MOTION FOR LEAVE TO FILE A REPLY BRIEF IN SUPPORT OF ITS BILL OF COSTS

Defendant, Life Insurance Company of North America ("LINA"), pursuant to Local Rule 7.1(b)(3) of the Local Rules of the United States District Court for the District of Massachusetts, hereby requests that this Court grant its Motion for Leave to File a Reply Brief to Plaintiff's Opposition to Defendant's Bill of Costs.  LINA submits that Plaintiff's Opposition raises several issues not addressed by LINA in its Bill of Costs and LINA's Reply Brief will assist the Court in determining the amount that may be taxable to the Plaintiff.  Plaintiff's counsel assents to LINA's request to file a Reply Brief.  The proposed Reply Brief is attached hereto.

Respectfully Submitted,

Defendant, Life Insurance Company of
North America,

By its Attorneys:

CREVIER & RYAN, LLP.

/s/Katherine R. Parsons
David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO # 657280
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel:  413-787-2400
Facsimile:  413-781-8235
Email:  kparsons@crevierandryan.com

<u>Assented to by</u>:
Colleen E. Cushing, Esq., BBO #663498
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01608-0156

## **LOCAL RULE 7.1 CERTIFICATION**

      I certify that the attorneys in this case have conferred and attempted in good faith to resolve or narrow the issues contained in this motion.

                                        /s/Katherine R. Parsons

## **CERTIFICATE OF SERVICE**

      I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 6th day of March, 2008.

                                        /s/Katherine R. Parsons

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS D. BRENNAN<br>Plaintiff,<br>v.<br><br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA<br>Defendant. | Civil Action No. 05-40034-FDS |

## REPLY IN SUPPORT OF DEFENDANT'S BILL OF COSTS

Defendant, Life Insurance Company of North America submits this Reply in support of its Bill of Costs. Contrary to Plaintiff's Opposition, Defendants are entitled to recover the costs associated with the deposition transcripts of Dr. Narendrakumar Sodha, Deborah Martin, Richard Lodi and Robert Longden (collectively referred to as the "Deposition Transcripts").

Plaintiff argues that the Deposition Transcripts were not used at trial and there are no "special circumstances" warranting the award of the costs for the Deposition Transcripts. Plaintiff's Opposition at 2. As Plaintiff notes, it is "within the discretion of the district court to tax deposition costs [not used at trial] if special circumstances warrant it." Templeman v. Chris Craft Corporation, 770 F.2d 245, 249 (1st Cir. 1985). The First Circuit has also explained that special circumstances mean "reasonably necessary" to the preparation of LINA's case. Id.; Papas v. Hanlon, 849 F.2d 702, 704 (1st Cir. 1988) (affirming the award of deposition costs to defendant for plaintiffs' depositions even though plaintiffs did not appear at the depositions stating, "noticing the plaintiffs' depositions are reasonable and necessary steps in the preparation of a defendant's case"). As explained below, taking the depositions of Attorney Longden and Dr. Sodha and obtaining the transcripts of the depositions of Deborah Martin and Richard Lodi were reasonably necessary to the preparation of LINA's case.

1

First, Attorney Longden's deposition was necessary to the preparation of LINA's case because this case involved the issue of whether Plaintiff was eligible for disability benefits under the terms of the Policy and more specifically, whether Plaintiff was working at least thirty-five hours per week. A large portion of the evidence relating to whether Plaintiff was working at least thirty-five hours per week arose from Plaintiff's negotiations for employment with Mail-Well. Plaintiff could not recall, and the Mail-Well representative did not know, what had occurred during the employment negotiations. Brennan Deposition Transcript at 120:7-12, relevant pages attached at Exhibit A; Dymond Deposition Transcript at 89:14-90:2, relevant pages attached at Exhibit B.

During discovery, LINA learned that Attorney Robert Longden represented Plaintiff in his employment negotiations with Mail-Well and subsequently learned that Mail-Well's former in house counsel, Mark Zoeller, was also involved in the negotiations. Due to Plaintiff's inability to remember, and Mail-Well's lack of knowledge, LINA deposed Attorney Longden with respect to the facts surrounding the employment negotiations. Subsequently, LINA deposed Attorney Zoeller with respect to the same. LINA's decision not to have Attorney Longden testify at trial does not obviate the fact that in order to discover the facts surrounding the negotiation of Plaintiff's employment with Mail-Well, it was necessary for the preparation of LINA's case to depose Attorney Longden and Attorney Zoeller. As explained in Kalman v. Berlyn Corporation, Civ. Action No. 82-0346F, 1989 WL 112818 *2 (D.Mass. 1989), LINA "was perfectly justified in deposing potential witnesses, even if those people failed in fact to take the stand . . . [a]bsent a showing that an attorney was deliberately or recklessly profligate, this Court is reluctant to deny the award of deposition costs in this case simply because neither the deposition or the witness made it to trial."

2

Second, obtaining the transcripts of Deborah Martin and Richard Lodi was necessary for the preparation of LINA's case. Plaintiff, not Defendant, noticed the depositions of Ms. Martin and Mr. Lodi. As such, Plaintiff clearly determined that their depositions were necessary in this case. Moreover, in order to appropriately prepare and defend this case at trial, it was necessary for LINA to obtain Mr. Lodi and Ms. Martin's deposition transcripts.

Finally, Dr. Sodha's deposition was necessary because it preceded the stipulation by the parties that Plaintiff was disabled under the terms of the Policy. Plaintiff identified Dr. Sodha as his neurologist and the doctor that told him to stop working. In order to determine whether Plaintiff was disabled under the terms of the Policy, it was necessary for LINA to depose Dr. Sodha. See Kalman v. Berlyn Corporation, Civ. Action No. 82-0346F, 1989 WL 112818 *2 (D.Mass. 1989).

For the foregoing reasons, LINA respectfully requests that the Court include the costs incurred in obtaining the deposition transcripts of Dr. Sodha, Mr. Lodi, Ms. Martin and Attorney Longden in the amount taxable to Plaintiff.

Respectfully Submitted,

Defendant, Life Insurance Company of North America,

By its Attorneys:

CREVIER & RYAN, LLP.

David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO # 657280
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel: 413-787-2400
Facsimile: 413-781-8235
Email: dcrevier@crevierandryan.com
kparsons@crevierandryan.com

## CERTIFICATE OF SERVICE

    I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this   day of March, 2008.

                                                      _____

# EXHIBIT A

```
                                        1
 1        UNITED STATES DISTRICT COURT
            DISTRICT OF MASSACHUSETTS
 2
                    Civil Action No. 05-40034-FDS
 3
    THOMAS D. BRENNAN,
 4              Plaintiff,

 5  vs.

 6  LIFE INSURANCE COMPANY OF NORTH AMERICA,
                Defendant.
 7
 8          DEPOSITION OF:  THOMAS D. BRENNAN, called by
    counsel for the Defendant, taken pursuant to the
 9  Federal Rules of Civil Procedure before Leigh B.
    Gershowitz, Certified Shorthand Reporter, Registered
10  Merit Reporter, Certified Realtime Reporter and
    Notary Public, at the Offices of Crevier & Ryan, LLP,
11  1500 Main Street, Suite 2020, Springfield,
    Massachusetts 01115-5727, on April 21, 2006,
12  commencing at 8:55 a.m.

13  APPEARANCES:

14      See Page 2

...

22          Leigh B. Gershowitz, CSR, RMR, CRR
              Certified Shorthand Reporter
23             Registered Merit Reporter
              Certified Realtime Reporter
```

```
                                        2
 1  APPEARANCES:

 2  FOR THE PLAINTIFF:

 3    BOWDITCH & DEWEY, LLP
      311 Main Street, P.O. Box 15156
 4    Worcester, Massachusetts 01608-0156
      (508) 791-3511
 5  BY: GEORGE A. BALKO, III, ESQUIRE

 6  FOR THE DEFENDANT:

 7    CREVIER & RYAN, LLP
      1500 Main Street, Suite 2020
 8    Springfield, Massachusetts 01115-5727
      (413) 787-2400
 9  BY: DAVID B. CREVIER, ESQUIRE
        -AND-
10      KATHERINE PARSONS, ESQUIRE
```

```
                                        3
 2  WITNESS:   DIRECT   CROSS   REDIRECT   RECROSS

 3  THOMAS D. BRENNAN
 5
                    COPY

 6
    EXHIBITS:       DESCRIPTION              PAGE
 7
    1    W-2 Form 1999                       70
 8  2    W-2 Form 1998                       74
    3    Journal                             98
 9  4    Closing binder                      111
    5    Draft of Employment Agreement       121
10  6    Draft of Employment Agreement       122
    7    Employment Agreement                122
11  8    Redacted tax returns                166
    9    Credit card statements              167
12  10   Citibank Advantage statement        171
```

```
                                        4
 1            S T I P U L A T I O N S

 3       It is agreed by and between the parties that
 4  all objections, except as to the form of the
 5  question, are reserved to be raised at the time of
 6  trial for the first time.

 8       It is further agreed by and between the
 9  parties that all motions to strike unresponsive
10  answers are also reserved to be raised at the time of
11  trial for the first time.

13       It is also agreed that the deponent will
14  read and sign the deposition.

16       It is further agreed by and between the
17  parties that notification to all parties of the
18  receipt of the original deposition transcript is also
19  hereby waived.
```

117

1  negotiations?
2      A.  No.
       Q.  Did you ever communicate to Mail-Well that
4  you were not involved with Northeastern on a
5  full-time basis?
6      A.  No.
7      Q.  Did you ever communicate to Mail-Well that
8  you would not be involved with Mail -- you would not
9  be -- did you ever communicate to Mail-Well that,
10 following the transaction, you would not be involved
11 with Mail-Well on a full-time basis?
12     A.  No.  And I think you're making a mistake.
13 Because when you say "full-time basis," you are using
14 a term that means different things to different
15 people.  I have a historically worked as much as 70
16 or 80 or even 100 hours a week.  That's what I think
17 of as full-time.  Full-time, I guess is really 24
18 hours a day.
19         But if you talk about this environment, you
20 might be talking about 40 hours a week or some other
21 number of hours a week for a particular type of
22 employee who works a different work schedule.  So in
23 the event that -- like, there are times that I've

118

1  said to myself, "I'm working full-time," meaning 80
2  hours a week.  And there are other times I've said,
3  "I'm working 40 hours a week and that's full-time
4  relative to Mail-Well."
5         So my idea of full-time as it relates to me
6  or you or an employee working a jet press may be
7  different.  And my idea of full-time most often is a
8  heck of a lot more than 40 hours.  So I want to make
9  sure that you understand, there may have been times
10 when I said to myself, I'm not working full-time for
11 Mail-Well.  But what I mean is I'm not working 80
12 hours a week for Mail-Well.  I may be working 40
13 hours a week, but I still have time to do other
14 things.  And I have every right to do other things.
15        So if I said to Mail-Well, or anybody else,
16 that I wasn't planning to work full-time, that
17 doesn't mean I wasn't planning to work 40 hours.
18 That might mean I'm not working 80 hours or I'm not
19 working exclusively for you or I won't sign a
20 commitment or an employment agreement that says "I
21 will work only and exclusively for you and have no
22 other investments or any other operations."  That's
23 what I mean when I say that.

119

1      Q.  When you entered into the employment
2  agreement with Mail-Well, did you have any other
3  business interests?
4      A.  By that I take it you mean businesses that
5  I was involved with personally?  You don't mean stock
6  in a public company or anything --
7      Q.  I don't mean that, yes.
8      A.  Okay.  No.
9      Q.  And during the entire period of time that
10 you worked for Mail-Well, did you have any other
11 business interests?  Once again, not including stock
12 you may own in a public company.
13     A.  No.  I had no other small business
14 operations of any sort.  I had public companies.  My
15 family owns a condominium that's rented out, stuff
16 like that.  But in terms of what I think you're
17 talking about, no, none.
18        MR. CREVIER:  I'm about to get into
19 the employment agreement, George.  And I'd like to
20 break a little bit now for lunch.  It's ten of 12:00
21 and there's actually a phone call I have to take at
22 noon as well.  We're going to go for a little bit
23 longer after lunch, so we might as well do it now.

120

1  Is that all right with you.
2         THE WITNESS:  Whatever you want to do.
3         MR. CREVIER:  Let's go off the record.
4         (Discussion off the record)
5  (Lunch recess taken at 11:50 a.m. until 12:31 p.m.)
6  BY MR. CREVIER:
7      Q.  Who negotiated your employment agreement
8  with Mail-Well?
9      A.  I can remember being involved in a -- I
10 think Bowditch & Dewey represented us for it.  So
11 they must have been involved in it.  But I have no
12 specific recollections of that negotiation.
13     Q.  Do you remember who at Bowditch & Dewey?
14     A.  I think Bob Longden was the one involved in
15 it.
16     Q.  Were there any negotiations regarding the
17 number of days a week you would work for Mail-Well?
18     A.  The number of days a week I would work for
19 Mail-Well?  I don't think it was ever addressed in my
20 presence.  It was always in terms of what I would do.
21 As a manager, it wasn't a question of how much you
22 would do it.  Obviously, you're not eligible for
23 overtime.  So as far as I know, there wasn't -- as

ERRATA SHEET

If there are any corrections to your deposition, indicate them on this sheet of paper giving the page number, line number, change from and change to.

| Pg # | Ln # | Change from | Change to |
|------|------|-------------|-----------|
| 16 | 16 | Holden | Hoboken |
| 19 | 7 | Shamrock | Shamroth |
| 38 | 1 | of | by |
| 42 | 4 | bode | mode |
| 54 | 9 | preview | purview |
| 56 | 19 | -- | should say "application for benefits |
| 70 | 19 | The | -- |
| 73 | | Add the following after the word something: Explanation: I just found my payroll stub from 11/5/99. | until the week ending 11/2/99, just 2 or 3 weeks before the acquisition by Mail-Well. At that time I got a raise to $75,000 per year. |
| 74 | | Delete all after "year" | Add: My salary was unchanged. |
| 83 | 2 | so | Flexo |
| 87 | 5-8 | Delete  Explanation: I remembered this when reading the transcript. | Yes. My home was the original place of business of N.H.C and was listed on the incorporation documents filed with the State of Massachusetts |
| 85 | 21 | | Add: Authorization means an action has been deemed to be in the company's best interest, and therefore necessary and required. If not, simply deny the authorization and prevent the action. |

ERRATA SHEET

If there are any corrections to your deposition, indicate them on this sheet of paper giving the page number, line number, change from and change to.

| Pg # | Ln # | Change from | Change to |
|---|---|---|---|
| 93 | 6 | of | into |
| 96 | 15 | is | as |
| 125 | 8 | damn | darn |
| 129 | 14 |  | employment as an executive |
| 143 | 13 | I'm | I'll |
| 149 | 7 | forth | much |
| 159 | 15 | ease | lease |
| 164 | 15 |  | Add: Only on good days where I'm feeling up to it, and also Add: for a limited... |
| 177 | 10 | Roots Chris Datra | Ruth's Chris Steak |
| 183 | 14 | Crevier | Balko |

1      C E R T I F I C A T E
2
3      I, THOMAS D. BRENNAN, do hereby certify under the
4      pains and penalties of perjury that I have read the
5      foregoing transcript of my testimony, and further
6      certify that said transcript is a true and accurate
7      record of said testimony.
8          Dated at                    , this 3RD day of
9      June          , 2006.
10
11
12
13     *Thomas D. Brennan* (signature)
            THOMAS D. BRENNAN
14
15
16
17
18
19
20
21
22
23

# EXHIBIT B

Page 1

```
  1              UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
  2
  3
  4   THOMAS D. BRENNAN              )
              Plaintiff              )   CIVIL ACTION NO.
  5                                  )   05-40034-FDS
      VS.                            )
  6                                  )
      LIFE INSURANCE COMPANY         )
  7   OF NORTH AMERICA               )   MAY 10, 2006
              Defendant              )
  8                                  )
```

DEPOSITION OF: MARY STOIK DYMOND, taken on behalf of the Defendant, Life Insurance Company Of North America, taken before Laurie A. Monaghan, Certified Shorthand Reporter, Registered Professional Reporter and Notary Public, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, at the Law Offices of Crevier & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield, Massachusetts, on May 10, 2006, commencing at 10:00 a.m.

APPEARANCES:

(SEE PAGE 2)

Laurie A. Monaghan
Certified Shorthand Reporter

---

Page 2

APPEARANCES:

BOWDITCH & DEWEY, LLP, 311 Main Street, P.O. Box 15156, Worcester, Massachusetts, 01615-0156, representing the Plaintiff.
BY: GEORGE A. BALKO, III, ESQUIRE

CREVIER & RYAN, LLP, 1500 Main Street, Suite 2020, Springfield, Massachusetts, 01115-5727, representing the Defendant.
BY: KATHERINE R. PARSONS, ESQUIRE

TYLER, COOPER & ALCORN, LLP, 205 Church Street, P.O. 1936, New Haven, Connecticut, 06509-0906, representing the Witness.
BY: GEORGE E. O'BRIEN, JR., ESQUIRE

---

Page 3

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Mary Stoik Dymond | 5* | 74** | | |

*By Ms. Parsons
**By Mr. Balko

| EXHIBITS: | DESCRIPTION | PAGE |
|---|---|---|
| Defendant's 1 | Subpoena | 9 |
| Defendant's 2 | Documentation | 23 |
| Defendant's 3 | Stock Purchase Agreement | 25 |
| Defendant's 4 | Closing Binder | 27 |
| Defendant's 5 | Documentation | 33 |
| Defendant's 6 | Employment Agreement | 41 |
| Defendant's 7 | Letter and Agreement | 44 |
| Defendant's 8 | Letter and Agreements | 46 |
| Defendant's 9 | Earnings Statements | 58 |
| Defendant's 10 | Severance Plan | 61 |
| Defendant's 11 | Letter | 62 |
| Defendant's 12 | Attachment to Release | 64 |
| Defendant's 13 | Agreement, Release & Waiver | 65 |
| Defendant's 14 | Voucher Entries | 70 |

---

Page 4

# STIPULATIONS

It is agreed by and between the parties that all objections, except as to the form of the question, are reserved to be raised at the time of trial for the first time.

It is further agreed by and between the parties that all motions to strike unresponsive answers are also reserved to be raised at the time of trial for the first time.

It is also agreed that the deponent will read and sign the deposition, and waive the sealing of the deposition.

It is further agreed by and between the parties that notification to all parties of the receipt of the original deposition transcript is also hereby waived.

\*\*\*\*\*\*

Page 89

1    A. That's correct. At that time we had made the
2  decision to close nine facilities in the United States
3  that were envelope facilities, and Northeast Envelope's
4  location was one of nine throughout the United States.
5  And we were closing those facilities over an
6  eighteen-month time frame, starting in about May, possibly
7  as early as late April of 2001 and extending through 2002.
8    Q. All right. You produced a copy of the purchase
9  and sale booklet, and Mr. O'Brien brought that today,
10  correct?
11    A. That's correct.
12    Q. Had you looked at that before today?
13    A. No, I had not looked at that before today.
14    Q. But you testified that you are confident that
15  there is nobody left at Cenveo who has any recollection of
16  the formation of that purchase and sale agreement?
17    A. That's correct.
18    Q. And part of that purchase and sale agreement is
19  the employment agreement for Mr. Brennan?
20    A. That's correct.
21    Q. So, there's nobody that has any institutional
22  recollection of what is meant by the terms of the
23  employment agreement, other than by your simply reading it

Page 90

1  today?
2    A. That's correct.
3    Q. So, when you testified at various times about
4  what you think the employment agreement means, that's
5  based on your own personal interpretation of the document,
6  rather than any corporate position, is that correct?
7    A. That's correct, and I tried very -- to say in my
8  deposition that that's what was stated within, as opposed
9  to my personal interpretation.
10    Q. Okay. I appreciate that. Now, you did testify
11  at one point, in talking about paragraph 2, in the
12  language about Mr. Brennan being expected to devote two
13  days per week to the business of the employer. Do you
14  personally have any knowledge of the hours Mr. Brennan
15  actually worked at any time after then-Mail-Well bought
16  Northeastern Envelope?
17    A. I have no personal knowledge of how many hours
18  he would have worked.
19    Q. Does anybody at Cenveo, based on your
20  investigation, have any knowledge about the hours
21  Mr. Brennan actually worked?
22    A. No.
23    Q. You testified that you made an inquiry at some

Page 91

1  point to the location of Braintree --
2    A. Yes.
3    Q. -- about his hours and got no response. Do you
4  remember that testimony?
5    A. That's correct, yes.
6    Q. Do you remember when you made that inquiry?
7    A. It is actually in one of the documents that was
8  produced. It was an e-mail from me to Deb Flynn, and she
9  did not respond and tell me. Did you find it?.
10    Q. I did. It's about three-quarters of the way
11  through, a little bit more. If you can find the
12  noncompetition agreement, it would be easier, because it's
13  shortly after that page. I'm on Exhibit 2.
14    A. I have it too.
15    Q. You have it?
16    A. Yeah.
17    Q. Okay.
18    A. So, June 18th of 2001 I sent an e-mail to Debbie
19  and asked her -- and again, I reference the contract, and
20  asked her if that was correct, and if not, how many
21  days/hours a week did he work, and she did not respond to
22  me.
23    Q. Did you follow up with a phone call?

Page 92

1    A. I don't believe I did. I don't recall at this
2  point.
3    Q. Did you assign anybody else to follow up with
4  her?
5    A. No, I don't believe so.
6    Q. Did you ever get a definitive answer to the
7  question of how many hours a week?
8    A. No, I did not.
9    Q. If he had only been working two days a week,
10  would he have been entitled to the severance payment?
11    A. There was a question about that, which is why I
12  referred it to our Legal Department.
13    Q. I understand. And not to put words in their
14  mouth, or your mouth about theirs, but is it your
15  interpretation that because he got a severance plan, the
16  Legal Department's determination was that he was a
17  full-time employee and was entitled to it?
18        MS. PARSONS: Objection.
19        THE WITNESS: I don't want to speculate as
20    to what the rationale was. I had concerns as to
21    whether or not he was eligible under the plan,
22    which is why I asked the Legal Department to
23    make the call, so to speak.

115

```
 1   COMMONWEALTH OF MASSACHUSETTS
     COUNTY OF HAMPDEN
 2

 3           I, LAURIE A. MONAGHAN, a Notary Public within
     and for the Commonwealth of Massachusetts, do hereby
 4   certify that I took the deposition of MARY STOIK DYMOND,
     pursuant to Rule 30(b)(6) of the Federal Rules of Civil
 5   Procedure, on May 10, 2006, at the Law Offices of Crevier
     & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield,
 6   Massachusetts.

 7           I further certify that the above named deponent
     was by me first duly sworn to testify to the truth, the
 8   whole truth and nothing but the truth concerning her
     knowledge in the matter of the case of THOMAS D. BRENNAN
 9   vs. LIFE INSURANCE COMPANY OF NORTH AMERICA, now pending
     in the United States District Court for the District of
10   Massachusetts.

11           I further certify that the within testimony was
     taken by me stenographically and reduced to typewritten
12   form under my direction by means of COMPUTER ASSISTED
     TRANSCRIPTION; and I further certify that said deposition
13   is a true record of the testimony given by said witness.

14           I further certify that I am neither counsel for,
     related to, nor employed by any of the parties to the
15   action in which this deposition was taken; and further,
     that I am not a relative or employee of any attorney or
16   counsel employed by the parties hereto, nor financially or
     otherwise interested in the outcome of the action.
17
             WITNESS my hand this 23rd day of May, 2006.
18
                         _____
19                       Laurie A. Monaghan
                         Notary Public
20                       Certified Shorthand Reporter
                         Registered Professional Reporter
21

22   My commission expires
     August 8, 2006
23
```

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

**PHILBIN & ASSOCIATES, INC.**

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947