## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                )
THOMAS D. BRENNAN               )
                    Plaintiff,  )
v.                              )          Civil Action No. 05-40034-FDS
                                )
LIFE INSURANCE COMPANY          )
OF NORTH AMERICA                )
                    Defendant.  )
_____)

### REPLY IN SUPPORT OF DEFENDANT'S BILL OF COSTS

Defendant, Life Insurance Company of North America submits this Reply in support of

its Bill of Costs.  Contrary to Plaintiff's Opposition, Defendants are entitled to recover the costs

associated with the deposition transcripts of Dr. Narendrakumar Sodha, Deborah Martin, Richard

Lodi and Robert Longden (collectively referred to as the "Deposition Transcripts").

Plaintiff argues that the Deposition Transcripts were not used at trial and there are no

"special circumstances" warranting the award of the costs for the Deposition Transcripts.

Plaintiff's Opposition at 2.  As Plaintiff notes, it is "within the discretion of the district court to

tax deposition costs [not used at trial] if special circumstances warrant it."  Templeman v. Chris

Craft Corporation, 770 F.2d 245, 249 (1st Cir. 1985).  The First Circuit has also explained that

special circumstances mean "reasonably necessary" to the preparation of LINA's case.  Id.;

Papas v. Hanlon, 849 F.2d 702, 704 (1st Cir. 1988) (affirming the award of deposition costs to

defendant for plaintiffs' depositions even though plaintiffs did not appear at the depositions

stating, "noticing the plaintiffs' depositions are reasonable and necessary steps in the preparation

of a defendant's case").  As explained below, taking the depositions of Attorney Longden and

Dr. Sodha and obtaining the transcripts of the depositions of Deborah Martin and Richard Lodi

were reasonably necessary to the preparation of LINA's case.

1

First, Attorney Longden's deposition was necessary to the preparation of LINA's case because this case involved the issue of whether Plaintiff was eligible for disability benefits under the terms of the Policy and more specifically, whether Plaintiff was working at least thirty-five hours per week.  A large portion of the evidence relating to whether Plaintiff was working at least thirty-five hours per week arose from Plaintiff's negotiations for employment with Mail-Well.  Plaintiff could not recall, and the Mail-Well representative did not know, what had occurred during the employment negotiations.  <u>Brennan Deposition Transcript</u> at 120:7-12, relevant pages attached at Exhibit A; <u>Dymond Deposition Transcript</u> at 89:14-90:2, relevant pages attached at Exhibit B.

During discovery, LINA learned that Attorney Robert Longden represented Plaintiff in his employment negotiations with Mail-Well and subsequently learned that Mail-Well's former in house counsel, Mark Zoeller, was also involved in the negotiations.  Due to Plaintiff's inability to remember, and Mail-Well's lack of knowledge, LINA deposed Attorney Longden with respect to the facts surrounding the employment negotiations.  Subsequently, LINA deposed Attorney Zoeller with respect to the same.  LINA's decision not to have Attorney Longden testify at trial does not obviate the fact that in order to discover the facts surrounding the negotiation of Plaintiff's employment with Mail-Well, it was necessary for the preparation of LINA's case to depose Attorney Longden and Attorney Zoeller.  As explained in <u>Kalman v. Berlyn Corporation</u>, Civ. Action No. 82-0346F, 1989 WL 112818 *2 (D.Mass. 1989), LINA "was perfectly justified in deposing potential witnesses, even if those people failed in fact to take the stand . . . [a]bsent a showing that an attorney was deliberately or recklessly profligate, this Court is reluctant to deny the award of deposition costs in this case simply because neither the deposition or the witness made it to trial."

Second, obtaining the transcripts of Deborah Martin and Richard Lodi was necessary for the preparation of LINA's case.  Plaintiff, not Defendant, noticed the depositions of Ms. Martin and Mr. Lodi.  As such, Plaintiff clearly determined that their depositions were necessary in this case.  Moreover, in order to appropriately prepare and defend this case at trial, it was necessary for LINA to obtain Mr. Lodi and Ms. Martin's deposition transcripts.

Finally, Dr. Sodha's deposition was necessary because it preceded the stipulation by the parties that Plaintiff was disabled under the terms of the Policy.  Plaintiff identified Dr. Sodha as his neurologist and the doctor that told him to stop working.  In order to determine whether Plaintiff was disabled under the terms of the Policy, it was necessary for LINA to depose Dr. Sodha.  See Kalman v. Berlyn Corporation, Civ. Action No. 82-0346F, 1989 WL 112818 *2 (D.Mass. 1989).

For the foregoing reasons, LINA respectfully requests that the Court include the costs incurred in obtaining the deposition transcripts of Dr. Sodha, Mr. Lodi, Ms. Martin and Attorney Longden in the amount taxable to Plaintiff.

Respectfully Submitted,

Defendant, Life Insurance Company of North America,

By its Attorneys:

CREVIER & RYAN, LLP.

/s/Katherine R. Parsons
David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO # 657280
1500 Main Street, Suite 2020
Springfield, MA 01115
Tel:  413-787-2400
Facsimile:  413-781-8235
Email: dcrevier@crevierandryan.com
          kparsons@crevierandryan.com

## <u>CERTIFICATE OF SERVICE</u>

     I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 7th day of March, 2008.


                         /s/Katherine R. Parsons               

# EXHIBIT A

## Page 1

```
 1              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
 2
                          Civil Action No. 05-40034-FDS
 3
 4   THOMAS D. BRENNAN,
                        Plaintiff,
 5
     vs.
 6
     LIFE INSURANCE COMPANY OF NORTH AMERICA,
 7                      Defendant.

 8          DEPOSITION OF:  THOMAS D. BRENNAN, called by
         counsel for the Defendant, taken pursuant to the
 9       Federal Rules of Civil Procedure before Leigh B.
         Gershowitz, Certified Shorthand Reporter, Registered
10       Merit Reporter, Certified Realtime Reporter and
         Notary Public, at the Offices of Crevier & Ryan, LLP,
11       1500 Main Street, Suite 2020, Springfield,
         Massachusetts 01115-5727, on April 21, 2006,
12       commencing at 8:55 a.m.

13   APPEARANCES:

14          See Page 2

15

16

17

18

19

20

21           Leigh B. Gershowitz, CSR, RMR, CRR
22             Certified Shorthand Reporter
                 Registered Merit Reporter
23              Certified Realtime Reporter
```

## Page 2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:

 3      BOWDITCH & DEWEY, LLP
        311 Main Street, P.O. Box 15156
 4      Worcester, Massachusetts 01608-0156
        (508) 791-3511
 5   BY: GEORGE A. BALKO, III, ESQUIRE

 6   FOR THE DEFENDANT:

 7      CREVIER & RYAN, LLP
        1500 Main Street, Suite 2020
 8      Springfield, Massachusetts 01115-5727
        (413) 787-2400
 9   BY: DAVID B. CREVIER, ESQUIRE
        -AND-
10      KATHERINE PARSONS, ESQUIRE

11
12
13
14
15
16
18
19
20
21
22
23
```

## Page 3

```
 1   WITNESS:    DIRECT   CROSS  REDIRECT  RECROSS
     ---------------------------------------------------
 2
 3   THOMAS D. BRENNAN

 4

 5                       COPY

 6   ---------------------------------------------------
     EXHIBITS:        DESCRIPTION            PAGE
 7   ---------------------------------------------------
      1    W-2 Form 1999                     70
 8    2    W-2 Form 1998                     74
      3    Journal                           98
 9    4    Closing binder          111
      5    Draft of Employment Agreement    121
10    6    Draft of Employment Agreement    122
      7    Employment Agreement             122
11    8    Redacted tax returns             166
      9    Credit card statements           167
12   10    Citibank Advantage statement     171

13
14
15
16
17
18
19
20
21
22
23
```

## Page 4

```
 1              STIPULATIONS

 2

 3       It is agreed by and between the parties that

 4   all objections, except as to the form of the

 5   question, are reserved to be raised at the time of

 6   trial for the first time.

 7

 8       It is further agreed by and between the

 9   parties that all motions to strike unresponsive

10   answers are also reserved to be raised at the time of

11   trial for the first time.

12

13       It is also agreed that the deponent will

14   read and sign the deposition.

15

16       It is further agreed by and between the

17   parties that notification to all parties of the

18   receipt of the original deposition transcript is also

19   hereby waived.

20
21
22
23
```

**Page 117**

1  negotiations?

2  A.  No.

Q.  Did you ever communicate to Mail-Well that

4  you were not involved with Northeastern on a

5  full-time basis?

6  A.  No.

7  Q.  Did you ever communicate to Mail-Well that

8  you would not be involved with Mail -- you would not

9  be -- did you ever communicate to Mail-Well that,

10  following the transaction, you would not be involved

11  with Mail-Well on a full-time basis?

12  A.  No.  And I think you're making a mistake.

13  Because when you say "full-time basis," you are using

14  a term that means different things to different

15  people.  I have a historically worked as much as 70

16  or 80 or even 100 hours a week.  That's what I think

17  of as full-time.  Full-time, I guess is really 24

18  hours a day.

19  But if you talk about this environment, you

20  might be talking about 40 hours a week or some other

21  number of hours a week for a particular type of

22  employee who works a different work schedule.  So in

23  the event that -- like, there are times that I've

**Page 118**

1  said to myself, "I'm working full-time," meaning 80

2  hours a week.  And there are other times I've said,

3  "I'm working 40 hours a week and that's full-time

4  relative to Mail-Well."

5  So my idea of full-time as it relates to me

6  or you or an employee working a jet press may be

7  different.  And my idea of full-time most often is a

8  heck of a lot more than 40 hours.  So I want to make

9  sure that you understand, there may have been times

10  when I said to myself, I'm not working full-time for

11  Mail-Well.  But what I mean is I'm not working 80

12  hours a week for Mail-Well.  I may be working 40

13  hours a week, but I still have time to do other

14  things.  And I have every right to do other things.

15  So if I said to Mail-Well, or anybody else,

16  that I wasn't planning to work full-time, that

17  doesn't mean I wasn't planning to work 40 hours.

18  That might mean I'm not working 80 hours or I'm not

19  working exclusively for you or I won't sign a

20  commitment or an employment agreement that says "I

21  will work only and exclusively for you and have no

22  other investments or any other operations."  That's

23  what I mean when I say that.

**Page 119**

1  Q.  When you entered into the employment

2  agreement with Mail-Well, did you have any other

3  business interests?

4  A.  By that I take it you mean businesses that

5  I was involved with personally?  You don't mean stock

6  in a public company or anything --

7  Q.  I don't mean that, yes.

8  A.  Okay.  No.

9  Q.  And during the entire period of time that

10  you worked for Mail-Well, did you have any other

11  business interests?  Once again, not including stock

12  you may own in a public company.

13  A.  No.  I had no other small business

14  operations of any sort.  I had public companies.  My

15  family owns a condominium that's rented out, stuff

16  like that.  But in terms of what I think you're

17  talking about, no, none.

18  MR. CREVIER:  I'm about to get into

19  the employment agreement, George.  And I'd like to

20  break a little bit now for lunch.  It's ten of 12:00

21  and there's actually a phone call I have to take at

22  noon as well.  We're going to go for a little bit

23  longer after lunch, so we might as well do it now.

**Page 120**

1  Is that all right with you.

2  THE WITNESS:  Whatever you want to do.

3  MR. CREVIER:  Let's go off the record.

4  (Discussion off the record)

5  (Lunch recess taken at 11:50 a.m. until 12:31 p.m.)

6  BY MR. CREVIER:

7  Q.  Who negotiated your employment agreement

8  with Mail-Well?

9  A.  I can remember being involved in a -- I

10  think Bowditch & Dewey represented us for it.  So

11  they must have been involved in it.  But I have no

12  specific recollections of that negotiation.

13  Q.  Do you remember who at Bowditch & Dewey?

14  A.  I think Bob Longden was the one involved in

15  it.

16  Q.  Were there any negotiations regarding the

17  number of days a week you would work for Mail-Well?

18  A.  The number of days a week I would work for

19  Mail-Well?  I don't think it was ever addressed in my

20  presence.  It was always in terms of what I would do.

21  As a manager, it wasn't a question of how much you

22  would do it.  Obviously, you're not eligible for

23  overtime.  So as far as I know, there wasn't -- as

ERRATA SHEET

If there are any corrections to your deposition, indicate them on this sheet of paper giving the page number, line number, change from and change to.

| Pg # | Ln # | Change from | Change to |
|------|------|-------------|-----------|
| 16 | 16 | Holden | Hohoken |
| 19 | 7 | Shamrock | Shamroth |
| 38 | 1 | of | by |
| 42 | 4 | bode | mode |
| 54 | 9 | preview | purview |
| 56 | 19 | -- | should say "application for benefits |
| 70 | 19 | The | -- |
| 73 | | Add the following after the word something: | until the week ending 11/2/99, just 2 or 3 weeks before the acquisition by Mail-Well. At that time I got a raise to $75,000 per year. |
| | | Explanation: I just found my payroll stub from 11/5/99. | |
| 74 | | Delete all after "year" | Add: My salary was unchanged. |
| 83 | 2 | so | Flexo |
| 87 | 5-8 | Delete | Yes. My home was the original place of business of N.H.C and was listed on the incorporation documents filed with the State of Massachusetts |
| | | Explanation: I remember remembered this when reading the transcript. | |
| 85 | 21 | | Add: Authorization means an action has been deemed to be in the company's best interest, and therefore necessary and required. If not, simply deny the authorization and prevent the action. |

ERRATA SHEET

If there are any corrections to your deposition,
indicate them on this sheet of paper giving the page
number, line number, change from and change to.

| Pg # | Ln # | Change from | Change to |
|------|------|-------------|-----------|
| 93 | 6 | of | into |
| 96 | 15 | is | as |
| 125 | 8 | damn | darn |
| 129 | 14 | | employment as an executive |
| 143 | 13 | I'm | I'll |
| 149 | 7 | forth | much |
| 159 | 15 | ease | lease |
| 164 | 15 | | Add: Only on good days where I'm feeling up to it, and also Add: for a limited... |
| 177 | 10 | Roots Chris Datra | Ruth's Chris Steak |
| 183 | 14 | Crevier | Balko |

05/09/2005  20:10  14133235439          LEIGH GERSHOWITZ                    PAGE  02
Case 4:05-cv-40034-FDS    Document 64-2    Filed 03/07/2008    Page 6 of 10

185

```
 1              C E R T I F I C A T E

 2

 3        I, THOMAS D. BRENNAN, do hereby certify under the

 4     pains and penalties of perjury that I have read the

 5     foregoing transcript of my testimony, and further

 6     certify that said transcript is a true and accurate

 7     record of said testimony.

 8        Dated at            ,  this 3^RD day of

 9     June            , 2006.

10

11

12

13        THOMAS D. BRENNAN

14

15

16

17

18

19

20

21

22

23
```

# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS D. BRENNAN
          Plaintiff                )    CIVIL ACTION NO.
                                    )    05-40034-FDS
VS.                                 )
                                    )
LIFE INSURANCE COMPANY              )    MAY 10, 2006
OF NORTH AMERICA                    )
          Defendant                 )

DEPOSITION OF:  MARY STOIK DYMOND, taken on behalf
of the Defendant, Life Insurance Company Of North
America, taken before Laurie A. Monaghan, Certified
Shorthand Reporter, Registered Professional Reporter
and Notary Public, pursuant to Rule 30(b)(6) of the
Federal Rules of Civil Procedure, at the Law Offices
of Crevier & Ryan, LLP, 1500 Main Street,
Suite 2020, Springfield, Massachusetts, on May 10,
2006, commencing at 10:00 a.m.

APPEARANCES:

(SEE PAGE 2)

                Laurie A. Monaghan
                Certified Shorthand Reporter

---

Page 2

APPEARANCES:

BOWDITCH & DEWEY, LLP, 311 Main Street, P.O. Box 15156,
Worcester, Massachusetts, 01615-0156, representing the
Plaintiff.
BY: GEORGE A. BALKO, III, ESQUIRE

CREVIER & RYAN, LLP, 1500 Main Street, Suite 2020,
Springfield, Massachusetts, 01115-5727, representing the
Defendant.
BY: KATHERINE R. PARSONS, ESQUIRE

TYLER, COOPER & ALCORN, LLP, 205 Church Street,
P.O. 1936, New Haven, Connecticut, 06509-0906,
representing the Witness.
BY: GEORGE E. O'BRIEN, JR., ESQUIRE

---

Page 3

# INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Mary Stoik Dymond | 5* | 74** | | |

*By Ms. Parsons
**By Mr. Balko

| EXHIBITS: | DESCRIPTION | PAGE |
|---|---|---|
| Defendant's 1 | Subpoena | 9 |
| Defendant's 2 | Documentation | 23 |
| Defendant's 3 | Stock Purchase Agreement | 25 |
| Defendant's 4 | Closing Binder | 27 |
| Defendant's 5 | Documentation | 33 |
| Defendant's 6 | Employment Agreement | 41 |
| Defendant's 7 | Letter and Agreement | 44 |
| Defendant's 8 | Letter and Agreements | 46 |
| Defendant's 9 | Earnings Statements | 58 |
| Defendant's 10 | Severance Plan | 61 |
| Defendant's 11 | Letter | 62 |
| Defendant's 12 | Attachment to Release | 64 |
| Defendant's 13 | Agreement, Release & Waiver | 65 |
| Defendant's 14 | Voucher Entries | 70 |

---

Page 4

# STIPULATIONS

It is agreed by and between the parties that all objections, except as to the form of the question, are reserved to be raised at the time of trial for the first time.

It is further agreed by and between the parties that all motions to strike unresponsive answers are also reserved to be raised at the time of trial for the first time.

It is also agreed that the deponent will read and sign the deposition, and waive the sealing of the deposition.

It is further agreed by and between the parties that notification to all parties of the receipt of the original deposition transcript is also hereby waived.

******

Page 89

1    A. That's correct.  At that time we had made the
2  decision to close nine facilities in the United States
3  that were envelope facilities, and Northeast Envelope's
4  location was one of nine throughout the United States.
5  And we were closing those facilities over an
6  eighteen-month time frame, starting in about May, possibly
7  as early as late April of 2001 and extending through 2002.
8    Q. All right.  You produced a copy of the purchase
9  and sale booklet, and Mr. O'Brien brought that today,
10  correct?
11    A. That's correct.
12    Q. Had you looked at that before today?
13    A. No, I had not looked at that before today.
14    Q. But you testified that you are confident that
15  there is nobody left at Cenveo who has any recollection of
16  the formation of that purchase and sale agreement?
17    A. That's correct.
18    Q. And part of that purchase and sale agreement is
19  the employment agreement for Mr. Brennan?
20    A. That's correct.
21    Q. So, there's nobody that has any institutional
22  recollection of what is meant by the terms of the
23  employment agreement, other than by your simply reading it

Page 90

1  today?
2    A. That's correct.
3    Q. So, when you testified at various times about
4  what you think the employment agreement means, that's
5  based on your own personal interpretation of the document,
6  rather than any corporate position, is that correct?
7    A. That's correct, and I tried very -- to say in my
8  deposition that that's what was stated within, as opposed
9  to my personal interpretation.
10    Q. Okay.  I appreciate that.  Now, you did testify
11  at one point, in talking about paragraph 2, in the
12  language about Mr. Brennan being expected to devote two
13  days per week to the business of the employer.  Do you
14  personally have any knowledge of the hours Mr. Brennan
15  actually worked at any time after then-Mail-Well bought
16  Northeastern Envelope?
17    A. I have no personal knowledge of how many hours
18  he would have worked.
19    Q. Does anybody at Cenveo, based on your
20  investigation, have any knowledge about the hours
21  Mr. Brennan actually worked?
22    A. No.
23    Q. You testified that you made an inquiry at some

Page 91

1  point to the location of Braintree --
2    A. Yes.
3    Q. -- about his hours and got no response.  Do you
4  remember that testimony?
5    A. That's correct, yes.
6    Q. Do you remember when you made that inquiry?
7    A. It is actually in one of the documents that was
8  produced.  It was an e-mail from me to Deb Flynn, and she
9  did not respond and tell me.  Did you find it?.
10    Q. I did.  It's about three-quarters of the way
11  through, a little bit more.  If you can find the
12  noncompetition agreement, it would be easier, because it's
13  shortly after that page.  I'm on Exhibit 2.
14    A. I have it too.
15    Q. You have it?
16    A. Yeah.
17    Q. Okay.
18    A. So, June 18th of 2001 I sent an e-mail to Debbie
19  and asked her -- and again, I reference the contract, and
20  asked her if that was correct, and if not, how many
21  days/hours a week did he work, and she did not respond to
22  me.
23    Q. Did you follow up with a phone call?

Page 92

1    A. I don't believe I did.  I don't recall at this
2  point.
3    Q. Did you assign anybody else to follow up with
4  her?
5    A. No, I don't believe so.
6    Q. Did you ever get a definitive answer to the
7  question of how many hours a week?
8    A. No, I did not.
9    Q. If he had only been working two days a week,
10  would he have been entitled to the severance payment?
11    A. There was a question about that, which is why I
12  referred it to our Legal Department.
13    Q. I understand.  And not to put words in their
14  mouth, or your mouth about theirs, but is it your
15  interpretation that because he got a severance plan, the
16  Legal Department's determination was that he was a
17  full-time employee and was entitled to it?
18    MS. PARSONS: Objection.
19    THE WITNESS: I don't want to speculate as
20  to what the rationale was.  I had concerns as to
21  whether or not he was eligible under the plan,
22  which is why I asked the Legal Department to
23  make the call, so to speak.

115

1  COMMONWEALTH OF MASSACHUSETTS
   COUNTY OF HAMPDEN
2

3          I, LAURIE A. MONAGHAN, a Notary Public within
   and for the Commonwealth of Massachusetts, do hereby
4  certify that I took the deposition of MARY STOIK DYMOND,
   pursuant to Rule 30(b)(6) of the Federal Rules of Civil
5  Procedure, on May 10, 2006, at the Law Offices of Crevier
   & Ryan, LLP, 1500 Main Street, Suite 2020, Springfield,
6  Massachusetts.

7          I further certify that the above named deponent
   was by me first duly sworn to testify to the truth, the
8  whole truth and nothing but the truth concerning her
   knowledge in the matter of the case of THOMAS D. BRENNAN
9  vs. LIFE INSURANCE COMPANY OF NORTH AMERICA, now pending
   in the United States District Court for the District of
10 Massachusetts.

11         I further certify that the within testimony was
   taken by me stenographically and reduced to typewritten
12 form under my direction by means of COMPUTER ASSISTED
   TRANSCRIPTION; and I further certify that said deposition
13 is a true record of the testimony given by said witness.

14         I further certify that I am neither counsel for,
   related to, nor employed by any of the parties to the
15 action in which this deposition was taken; and further,
   that I am not a relative or employee of any attorney or
16 counsel employed by the parties hereto, nor financially or
   otherwise interested in the outcome of the action.

17
           WITNESS my hand this 23rd day of May, 2006.
18

19         Laurie A. Monaghan
           Notary Public
20         Certified Shorthand Reporter
           Registered Professional Reporter

21

22 My commission expires
   August 8, 2006
23

**PHILBIN & ASSOCIATES, INC.**

959 MAIN STREET
4TH FLOOR
SPRINGFIELD, MA 01103

(413) 733-4078
Pittsfield: (413) 499-2231
FAX: (413) 734-4588

Serving the legal community of Massachusetts since 1947